JAMES CORNELL v. THE DETROIT ELECTRIC RAILWAY COMPANY.

*Electric railways—Frightening horse—Contributory negligence.*

A person who drives a young horse alongside of an electric street railway with full knowledge of the situation and danger, for the express purpose of testing the horse, is guilty of such contributory negligence as bars a recovery for injuries sustained in consequence of his horse taking fright at an approaching train.

Error to Wayne. (Hosmer, J.)  Argued June 27, 1890. Decided October 10, 1890.

Negligence case.  Defendant brings error.  Reversed. The facts are stated in the opinion.

*Russel & Campbell,* for appellant, contended:

1. Defendant had a right to operate its road by electricity, and the fact that when so operated it had some tendency to frighten horses does not in itself afford any ground for recovery. Some negligence in the operation and management of the car must be shown; citing *Gilbert v. Railway Co.,* 51 Mich. 488; *Macomber v. Nichols,* 34 Id. 212; *Agnew v. Corunna,* 55 Id. 428; *Selleck v. Railway Co.,* 58 Id. 195; *Railway Co. v. Farver,* 111 Ind. 195; *Railway Co. v. Wynant,* 114 Id. 525; *Piollet v. Simmers,* 106 Penn. St. 95; *Railway Co. v. Taylor,* 104 Id. 306.

*James H. Pound,* for plaintiff, contended:

1. The plaintiff's case, which was believed by the jury, is within the definitions of negligence laid down by this Court; citing *Railroad Co. v. Van Steinburg,* 17 Mich. 99; *Railway Co. v. Stark,* 38 Id. 714; *Brown v. Railway Co.,* 49 Id. 153; *Kendrick v. Towle,* 60 Id. 363.

GRANT, J. The defendant owns and operates an electric railway upon Dix avenue, in the city of Detroit, under authority granted by the city. At the time of the accident complained of, the street was not paved; the track was laid in the center, and was several inches higher than the roadway upon either side, thereby rendering it somewhat difficult for persons to drive from one side to the other, except at the street crossings. The situation of Dix avenue, and of the streets crossing it near where the accident occurred, is shown by the diagram on following page.

The land in the vicinity was open common, except three houses situated at the corner of Dix and Military avenues. Plaintiff had his horse and buggy, and was driving on the right-hand side of the street. His statement is substantially as follows: He had crossed Campbell avenue, and was within about 75 feet of Cavalry avenue, when he saw the cars coming around the bend, about 350 feet distant. He stopped his horse, put up his hand as a signal to stop the train, jumped out of his buggy, and took his

horse by the head.    He judged that the cars were about half-way down when he caught his horse by the head, and that they were slowing down.    The horse began to exhibit signs of fear, and he led him across the sidewalk into the open field.    The horse dragged plaintiff around the open field, and finally turned, and dragged him across the street onto the track, where plaintiff fell and was injured, and the horse ran away.    When the horse began to run with the plaintiff, the cars, according to his own testimony, were about 150 feet distant, and slowing down, and stopped before reaching the point in the street where plaintiff stopped his horse.

The testimony on the part of the defense was that the person in charge of the cars saw plaintiff when about 400 feet distant; that he saw signs that the horse was frightened; that he rung the gong when nearing the bend, which statement is not disputed; that he ran slowly for about 250 feet, when he brought the cars to a stop; that the horse did not cross the track, but that he came back

82 MICH.—32.

over the sidewalk into the street, then turned around
and ran across the sidewalk again into the open lot; that
plaintiff stumbled on the sidewalk as the horse was going
over it the second time; and that all usual and necessary
precautions were taken by the defendant's servants.

The negligence alleged is that defendant did not observe
sufficient caution in coming around the bend to alarm
plaintiff, so as to enable him to avoid the trouble com-
plained of; but that, without notice, and at a great rate
of speed, it caused its cars to come suddenly around the
bend as plaintiff was approaching. There is no evidence
that any other notice than the noise produced by the
running of the cars and the ringing of the gong would
have been of any avail, nor that those were not sufficient.
Plaintiff has not even suggested the necessity of any other
notice. But any question of notice is eliminated from the
case by the plaintiff's own testimony. He was familiar
with the situation. He had driven there before, and had
had trouble with other horses. He was on the outlook,
and saw the cars as soon as they reached the bend. Any
additional noise for the purpose of giving notice would
certainly have tended to increase his horse's fright, with-
out being of any possible use.

The record fails to show negligence on the part of
the defendant. The rate of speed is not shown to have
been unusual, or excessive. The horse evidently became
restive and somewhat frightened when the cars first
appeared in sight, 350 to 400 feet distant. Defendant's
servants in charge of the cars were not under obligations
to immediately stop them. They had fulfilled their duty
by commencing to run more slowly. If such companies
were obliged to stop their cars at that distance upon see-
ing a horse, with his owner holding him by the head, in
apprehension of fright, or in actual fright, they could

not meet the demands of the requirements of public travel. The defendant had an equal right to the use of the street with its cars as plaintiff with his horse. Each was bound to exercise due care and caution; and this the defendant did. It was evidently the sight of the moving cars, not their speed, that frightened the horse. They were from 150 to 200 feet distant when plaintiff and his horse went over the sidewalk into the common. It is difficult to see how the defendant's servants were under any legal obligation to act differently from what they did.

The plaintiff is not entitled to recover on his own statement. He took his horse, three years old, which was unused to the place or the cars, and for the purpose of trying him. He testified: "I never had the horse there before. I wanted to see how he acted." He knew the danger of his horse becoming frightened, and yet he took him into this dangerous place knowing that the cars were coming. There was ample opportunity for him to have turned into another street where there was less danger in subjecting his horse to the sight of the cars. It was also admitted upon the hearing that there were other streets by which he might have reached his destination. It is common knowledge that such vehicles, when first seen in motion, have a tendency to frighten animals. When one deliberately drives into such a place as this was, with a full knowledge of the situation and danger, for the express purpose of testing his horse, he is guilty of contributory negligence, and, under the decisions of this Court, is not entitled to recover. This disposal of the case renders it unnecessary so discuss the other assignments of error.

The judgment must be reversed, and a new trial ordered, with costs of both courts.

The other Justices concurred.