EASTWOOD, Appellant, vs. LA CROSSE CITY RAILWAY COMPANY, Respondent.

*September 25 — October 13, 1896.*

*Street railways: Frightening horses: Duty to slow up and stop car: Negligence: Evidence.*

1. Neither the common law, nor a city ordinance providing that employees of street railway companies shall use reasonable diligence to prevent injury to persons, teams, and vehicles, and shall stop the car on the appearance of danger to any one near the track, when by doing so injury may be avoided, requires such employees to slow up and stop the car every time a horse or team begins to show signs of uneasiness.

2. Evidence showing that the motorman on an electric car saw a gentle team driven by a man beginning to prance and "act up" at a distance of 175 feet; that they were upon a well-traveled road at the side of the track in perfect safety; that when from forty to one hundred feet distant the motorman threw off the current and applied the brakes; and that just as he was passing the team they backed suddenly around and threw the corner of the sleigh against the car, but wholly failing to show that when first seen the team seemed beyond control,— is *held* insufficient to justify any inference of negligence on the part of the motorman.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

Personal injuries. The plaintiff was riding in a bobsleigh drawn by two horses along a street in the city of La Crosse on the morning of February 14, 1894, when a collision occurred between the sleigh and an electric car operated by defendant, throwing the plaintiff out and injuring her. The

accident occurred on Fifth street, which runs north and south, and in the center of which is a single street-car track, upon which the defendant runs trolley cars. The plaintiff, with her brother and sister, had driven in from the country, and were proceeding north on Fifth street with a gentle team, which was driven by the brother. The street is sixty-six feet in width between fence lines; the roadway being thirty-six feet wide between curbstones, and the distance between the east rail of the street-car track and the curb-stone being fifteen and eight-tenths feet, and the same upon the west side. The plaintiff's party was proceeding north on the east side of the street-car track, where there was a traveled track in good condition. As they neared Division street (which crosses Fifth street at right angles), and were about forty feet south of the south line thereof, the horses began to prance and "act up;" and they then saw that an electric street car was approaching them, being at that moment, as they testify, about 175 feet north of them, or about sixty feet north of the north line of Division street, and coming at the rate of nine or ten miles an hour.

According to the testimony of the plaintiff and her brother and sister, the motorman did not slacken the speed of the car, so far as they could see. The brother thus described the accident: "The first I noticed with regard to my team was, they commenced prancing, and then showed fright. There was a whistling sound on the wire, and the horses commenced prancing, and then they shied. They went a couple of steps. Don't know just exactly how many steps they took. At the time they commenced to shy, the car was about 175 feet from us. I have been there since that time, and know the distance. That would bring it to the first guy pole north of Division street. The car was coming at a rapid rate. So far as I could see, there wasn't any decrease in the speed of the car before it struck us. When the horses commenced to shy, they swung around to

the east, and left the hind bob facing about southeast; brought sleigh and team in a V shap. While in that position the car struck us on the northwest corner of the box,— the front end. It splintered the box. The box and sleighs are in the same condition now as at that time. It threw me forward in the box. My sisters were thrown out." Upon cross-examination he further testified: "We were right in the main. traveled track; about midway between the gutter and the street-car track. The traveled track was right alongside of the street-car track; far enough away to pass it. When I saw the car 175 feet away, it was coming towards us. · The team was in the traveled track, prancing, acting up,— dancing up and down, and as I looked up and saw the car the team came suddenly to a stop. I slapped them with the lines. I was attending to the team, to keep them straight. I glanced at the team and the car. As the car approached, they swung around towards the gutter,— merely swung around,— shied. Couldn't tell how far away the car was when the team swung around." Question. "Relative to that team backing into the gutter, when were you struck by the car? When did the box strike the car,— just as the team jumped into the gutter? that is, did any time elapse between the jumping of the team into the gutter and the striking of the box by the car?" Answer. "I could not give you any time." Question. "Didn't the one follow the other almost instantly?" Answer. "Yes; there was almost no time."

This account is substantially the same as that given by the plaintiff and her sister. The motorman testified that he saw the team trotting along when they were a block away; that when he got to the north crossing of Division street (about 100 feet from the place of the accident) he first observed anything unusual. "They kind of stopped. They were then south of Division street, east of the railway track. They were right on the traveled track. I shut off

my current and put on the brake, and while I was doing that they made a lunge towards the gutter, towards the east, and that kind of backed up the sleigh; throwed the front end of the box right towards the corner of the car. I was about on the first crossing of Division street when I shut off the current and applied the brake,— the north crossing. I put the brake on as tight as I could. . . . After I saw the team was uneasy I put on the brake as quick as I could, and as tight as I could. I first turned off the current." The fact that the motorman applied the brake and turned off the current at Division street was testified to by the conductor, as well as by several passengers who were on the car at the time. In fact, it is undenied and must be considered as a verity in the case, the only doubtful point being as to just where it was done; the testimony of some of the witnesses tending to show that it was done somewhere towards the middle or south side of Division street, instead of at the north crossing, as the motorman testified. The car stopped at a short distance from the scene of the accident, variously estimated by the witnesses; some putting it at about a car length, and others two or three times that distance.

An ordinance of the city of La Crosse governing the operation of the street railway was offered in evidence, and contained the following provisions, among others: "(1) No car shall be run at a greater rate of speed than twenty (20) miles per hour. (4) The employees employed by said company shall use reasonable care and diligence to prevent injury to persons, and on the appearance of danger to any one on or near the track, the cars shall be stopped when by so doing such injury may be averted. (5) All proper care shall be used by employees to prevent injury to teams, wagons, carriages and other vehicles." From a judgment of nonsuit granted at the close of all the evidence, the plaintiff appealed.

Eastwood vs. La Crosse City R. Co.

For the appellant there was a brief by *Bleekman, Bloomingdale & Bergh,* and oral argument by *A. E. Bleekman* and *Martin Bergh.* They contended, *inter alia,* that where a motorman, while operating a street car and sounding the gong, sees that the car and noise are frightening a horse and thereby endangering the driver, it is his duty to do what he reasonably can to diminish the fright of the horse. *Benjamin v. Holyoke St. R. Co.* 160 Mass. 3; *Ellis v. L. & B. R. Co.* id. 341; *Winter v. Kansas City Cable R. Co.* 6 L. R. A. 536.

For the respondent there was a brief by *Losey & Woodward* and *E. C. Higbee,* and oral argument by *G. M. Woodward.*

WINSLOW, J. The only negligence claimed by the plaintiff is that the motorman did not put on the brakes and slacken the speed of his car soon enough. Unless it is the duty of the motorman to slacken his speed and stop his car at the moment a horse upon the street within the range of his vision begins to show signs of uneasiness, this claim of negligence cannot be sustained. Such is not a motorman's duty. The street-railway service is for the benefit of the entire public, and it cannot fulfill its legitimate purpose unless it is operated with some degree of celerity. To demand that a car must be slowed up or stopped every time a horse or team betrays signs of uneasiness would render it impossible for the company to perform its duty of reasonably rapid transportation of passengers. Neither the common law nor the ordinance introduced imposes such a duty. Giving the plaintiff's testimony its full effect, the facts are simply these: The motorman saw, or might have seen, at a distance of about 175 feet in advance, a gentle team driven by a full-grown man, which was beginning to prance or "act up." It was not on the track, but upon a well-traveled road at the side of the street-car track, nearly sixteen feet in width, and

was in perfect safety. There is absolutely not a particle of evidence that the team seemed to be beyond control. The motorman waited until he was crossing Division street, which would be somewhere from forty to one hundred feet distant from the place of the accident, and then put on the brakes and threw off the current. Just as he was passing the team it backed suddenly around and threw the corner of the sleigh against the car. These facts do not, in our judgment, justify any inference of negligence on the part of the motorman. As we have before said, if such an inference can be drawn from them, it must be because a motorman is required to put on his brakes whenever he sees a horse in any part of the street show signs of apprehension. Such is not the law. If it were, street railways could not perform their duties to the public. *Bishop v. Belle City St. R. Co.* 92 Wis. 139.

*By the Court.*— Judgment affirmed.