# CASES DETERMINED

# August Term, 1900.

---

HOLDRIDGE, Respondent, vs. MENDENHALL, Receiver, Appellant.

| 108 | 1 |
| 110 | ²421 |

*September 28 — October 30, 1900.*

*Street railways: Negligence: Injury to child in street: Contributory negligence of child and of parents: Court and jury: Proximate cause: Speed of car: Loss of services: Evidence.*

1. In an action to recover for loss of the services of a boy less than seven years old who was run over and injured by a street car, the questions whether the boy was guilty of contributory negligence and whether his parents were negligent in permitting him to be alone upon the street are *held*, upon the evidence, to have been for the jury.

2. The excessive and negligent speed of a street car cannot be said to have been the proximate cause of the injury to a boy who unexpectedly ran in front of the car, if the motorman had no reason to expect any such action on his part and the accident would have happened in the same way had the car been going at a normal and reasonable speed.

3. The evidence in this case is *held* to show that the boy unexpectedly stepped or ran in front of the car when it was only a few feet distant, and, there being no reason to say that the motorman could have anticipated such action, his failure to anticipate it cannot be called negligence.

4. In an action by a parent to recover for loss of the services of a minor child, evidence as to the parent's pecuniary condition, the amount of his property, his earnings, and the size of his family, is inadmissible.

VOL. 108 — 1

Holdridge vs. Mendenhall.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

This is an action by a father to recover for the loss of services of his minor son. The evidence upon the trial showed that in June, 1900, the defendant, as receiver of the Duluth Street Railway Company, was operating street cars upon street-railway tracks in the city of Superior, Wisconsin; that the plaintiff's son Rex, a boy about six years nine months of age, was struck by one of the defendant's street-railway cars on the 23d of June, 1900, and run over by the car, receiving serious injuries. The accident happened upon Tower avenue, which street runs directly north and south and is the principal business street in the city of Superior, at a point about 150 feet south of the intersection of Tower avenue with an east and west street called Belknap street. Tower avenue is a street 100 feet in width, and there are two street-railway tracks in the center of the street. The car in question had stopped previous to the accident for the purpose of letting off passengers at the south side of Belknap street. It then proceeded south for about 150 feet, at which point the accident happened. The time of the accident was about 6 o'clock p. m., and it was still daylight. It appears from the evidence that the boy Rex, with some other boys, was on the west sidewalk of Tower avenue, when one of the other boys threw three peanuts into the street, saying, "Come on, kids; I'll throw out some peanuts." One of the peanuts went only a few feet into the street, another went onto the street-railway tracks, and the third went nearly to the east side of the roadway of the street. Rex and two other boys started for the peanuts. One of the other boys got the nearest peanut, and Rex, seeing that he could not get that one, started for the second, and got it, and was about to go for the third one, when he was struck by the defendant's car, which he had not seen. He was carried along a little distance on the fender of the car, but

rolled off the fender under the car, which passed over him and inflicted injuries. The claim of the plaintiff is that the boy had been standing upon the track, eating the peanut, for some seconds, and that the motorman was guilty of negligence in not seeing him and stopping the car or giving warning. On the other hand, the claim of the defendant is that the boy darted immediately in front of the car, so that it could not be stopped, or any warning given.

There was a general verdict for the plaintiff, assessing his damages at $1,160, of which $800 was compensation for future services. The jury also answered a special question which was submitted to them by the court to the effect that the boy was not guilty of any want of ordinary care which contributed to cause the accident. Upon a motion for a new trial the court held that the verdict of $800 for future services was excessive, and granted a new trial unless the plaintiff remitted $500 from the verdict. This remission was made, and judgment entered for the balance of the verdict, and the defendant appeals.

For the appellant there was a brief by *Ross, Dwyer & Hile*, and oral argument by *W. D. Dwyer*. They argued, among other things, that there was no negligence of the motorman proximately causing the injury. *Greenberg v. Third Ave. R. Co.* 35 App. Div. 619; *Pletcher v. Scranton T. Co.* 185 Pa. St. 147; *Funk v. Electric T. Co.* 175 Pa. St. 559. The boy was guilty of negligence precluding a recovery. *Ewen v. C. & N. W. R. Co.* 38 Wis. 613, 628; *Strong v. Stevens Point*, 62 Wis. 255, 264; *Morey v. Gloucester St. R. Co.* 171 Mass. 164; *Weiss v. Metropolitan St. R. Co.* 53 N. Y. Supp. 449; *Wendell v. N. Y. C. & H. R. R. Co.* 91 N. Y. 421, 425; *O'Rourke v. New Orleans City & L. R. Co.* 51 La. Ann. 755; *Dull v. C., C., C. & St. L. R. Co.* 21 Ind. App. 571.

For the respondent there was a brief by *Heber McHugh* and *W. P. Crawford*, and oral argument by *Mr. McHugh*.

Winslow, J.   The boy who was run over by the defend-
ant's street car in this case was a little less than seven years of
age, and was upon the public street, in the daytime, alone,
or at least not accompanied by either his parents or any
custodian.   It is argued that the trial court should have
taken the case from the jury, and granted a nonsuit, on the
ground of contributory negligence on the part of the boy or
his parents.   This contention cannot be sustained.   In case
of an accident happening to a child of such tender years, it
must be an extreme case indeed which would warrant a
court in granting a nonsuit on the ground of the child's
negligence; and it is frequently said that such a child can-
not be held guilty of contributory negligence as a matter
of law.   *Johnson v. C. & N. W. R. Co.* 49 Wis. 529; *McVoy
v. Oakes*, 91 Wis. 214.   Nor can it be said that the parents
are guilty of negligence as matter of law for permitting
such a child to be alone upon the street.   Both of these
questions were properly for the jury upon the evidence.
*Johnson v. C. & N. W. R. Co., supra.*

But the question whether the evidence showed any negli-
gence on the part of the motorman which was the proximate
cause of the injury is a more difficult one.   The negligence
claimed is that the car was running at excessive speed, that
no signals were given, and thus that the boy was run down
when the evidence tended to show that he had been on the
track a sufficient time within which signals could have been
given or the car stopped before reaching him.   There is no
dispute but that the accident happened in the middle of a
block, at a place where people were not expected to cross
the street; and it is admitted that the street car, at the time
of the accident, had only proceeded about 150 feet from a
full stop.   One of the plaintiff's witnesses testifies that in
his judgment the car was going at the rate of twenty-five
miles an hour when it was still about sixty feet from the
boy, or at a point about ninety feet from the starting point.

There is no other testimony, however, which corroborates this estimate, and the testimony of the remaining witnesses on the subject is that the speed did not exceed six or eight miles an hour.   The inherent improbability, and almost impossibility, of attaining such a speed in such a short distance is patent, and is supplemented by considerable testimony of experts that it would be absolutely impossible with the motor in use upon the car to attain a speed of twenty-five miles an hour within that distance, or within any distance less than two or three blocks.   Assuming, however, that there was sufficient testimony to go to the jury upon the subject of excessive and negligent speed, it is very evident that, unless such negligent speed was the proximate cause of the injury, there can be no recovery on this ground. *Pletcher v. Scranton T. Co.* 185 Pa. St. 147.   If the boy ran unexpectedly in front of the car, and the motorman had no reason to expect any such action on his part, and the accident would have happened in the same way had the car been going at a normal and reasonable speed, then it cannot be said that the speed was the proximate cause of the injury.   The accident, in that event, was caused by the sudden and unexpected movement of the boy, and not by the negligence of the motorman.   *Funk v. Electric Traction Co.* 175 Pa. St. 559.

Careful examination of all of the evidence of the eyewitnesses of the accident, including that of the boy himself, convinces us that it was practically undisputed in the case that the boy unexpectedly stepped or ran in front of the car when only a few feet distant, and when it could not have been stopped, nor effective warning given, before it ran over him, whatever its speed.   It is true that the boy himself testified that he ran into the middle of the track, and got the peanut, and was standing still, eating it, and had been so standing for a few minutes when he was struck by the car; but this evidence is not only impossible under the admitted facts, but is at variance with the testimony of all

the other witnesses who saw the accident, and is also de-
nied by the boy himself.   During his cross-examination he
said that it took him about a second to get the first peanut,
which he picked up between or on the tracks; that, if the
car had not struck him, it would have been about a second
more when he got the other one; that the moment he got
the first one he was going to get the other one, and the car
struck him while he was in the act of moving; that he knew
what a second was; that the clock ticks about once a sec-
ond, and it took him just about that long to go from the
curbstone to the first track, and would have taken him
about two seconds to get the other one if the car had not
hit him.   This was repeated in substance two or three times.
The boy who threw the peanuts, who was ten years of age,
testified that Rex had gone across the west track, and stood
between the tracks; that some boys hollered at him, and he
jumped right in front of the car, and it struck him.   Dr.
Sarazin, who was standing on the sidewalk, and saw the
peanuts thrown, and the boys start after them, did not keep
his eye upon them, but saw Rex on the track, looking
east, when the car was about ten feet from him, and at once
shouted to the motorman.   A young man eighteen years of
age, who saw the accident from the sidewalk on the east
side of the street, testified that he heard somebody yell, and
looked, and saw the boy jump right in front of the car;
that he ran from the east right in front of the car, and was
knocked down. The motorman testified that when he started
from Belknap street no one was on the track; that he saw
some boys playing on the west side of the street about the
curbstone; that all of a sudden they scattered, and were
grabbing after something; that one chased another, and came
to within three or four feet of the track and stopped, and
one stooped to pick up something, and then jumped out in
the middle of the track in front of the fender; that he (the
motorman) was about eight feet from the boy when he

stooped to pick up something, and that he then had thrown off the power and hollered at the boy, and was reaching for the reverse, and in that time the boy jumped in front of the car. The only other witness of the accident who testified was a man who sat on the curbstone at the southwest corner of Tower avenue and Belknap street, who testified that as he sat there he saw three boys start to run across the track; that the street car passed going south very rapidly, and that almost instantly as the car passed he saw two boys cross on the other side of the track; that the third boy was under the car; that he did not see him hit, and did not know which way he was looking, nor how he got struck; that it was all done very quickly,— in a second or two.

As will be seen, there is nothing in all this evidence except the palpably impossible statement of the boy himself, which he afterwards contradicted, which brings the boy upon the track more than ten feet in front of the car. The conclusion that he stepped or ran in front of the car when only a few feet distant is irresistible; in fact, the evidence will sustain no other. The testimony is unanimous that the car could not be stopped within this distance, whether it was going twenty-five miles an hour or six miles an hour. The most of the witnesses who testify on the subject say that a car going eight miles an hour could not be stopped short of about sixty feet. It is true one witness says that an emergency stop could be made inside of fifteen feet, but he afterwards says that this fifteen feet would be after the power is actually applied on reversal, and that it would take about thirty seconds before the power got hold of the car.

So the case presented is one of the sudden and unexpected action of the boy in running in front of the car. We see no reason to say that the motorman could reasonably anticipate such action on the part of the boy, and hence his failure to anticipate it cannot be called negligence. *East-wood v. La Crosse City R. Co.* 94 Wis. 163.

A minor error was committed on the trial affecting the measure of damages. The plaintiff was allowed to testify as to his pecuniary condition, the amount of his property, his earnings, and the size of his family. This was error in an action for loss of services, under the ruling of this court in the case of *Rooney v. Milwaukee C. Co.* 65 Wis. 397.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

CASSODAY, C. J., took no part.