LINCOLN TRACTION COMPANY v. JESSE D. MOORE.

FILED DECEMBER 2, 1903. No. 13,066.

1. **Action for Personal Injury:** REVIEW. Questions not presented to the trial court by the motion for a new trial, and which are not mentioned in the petition in error, can not be considered by this court.

2. ———: NEGLIGENCE: EVIDENCE. In an action for personal injuries due to the frightening of plaintiff's team by the alleged negligent operation of a street car in running the same carelessly and negligently at a high rate of speed, and where it appeared from the testimony of all of the witnesses that the car was going slowly, that the motorman slowed it down and stopped it as soon as he saw that the team was becoming frightened, no inference of negligence arises, and a judgment for plaintiff will be reversed for want of evidence to sustain it.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*Paul Clark* and *Charles S. Allen,* for plaintiff in error.

*Lorenzo W. Billingsley, Robert J. Greene* and *Richard H. Hagelin, contra.*

BARNES, C.

The Lincoln Traction Company, the plaintiff herein, owned and operated a street railway on the highway running east and west on the north side of Lincoln Park, adjacent to the city of Lincoln, on the 29th day of April, 1899. On the afternoon of that day Jesse D. Moore, the defendant herein, was driving a double team hitched to a light road wagon going east over that road; the traction company's street car rounded the curve on its way west, when the team was about four hundred feet away. From the evidence it appears that the car was going slowly, and when the motorman saw the team was becoming frightened he turned the electric current off and slowed up still more. Some of the witnesses say he stopped the car, and some of them testified that the car was either stopped or was creeping along very slowly toward the team. The horses were traveling in a walk, and when they got nearly to the car they suddenly jumped to one side into the ditch. In attempting to hold them and control their movements, Moore place his foot against the dashboard of the wagon to brace himself; the pressure broke it off, causing him to slide partly out of the wagon; his foot struck the ground, his leg was broken, the team escaped from his control and ran away. The testimony further shows that the injuries which he thus sustained were quite severe and perhaps permanent. Upon his recovery, he commenced this action in the district court for Lancaster county to recover for the damages caused by his injuries; the trial resulted in a verdict and judgment in his favor for $3,000, and the traction company prosecute error therefrom. The petition on which the cause was tried contained the following allegations of negligence:

"The plaintiff alleges that, on the said date aforesaid,

while he was driving on said highway, one of the said electrical cars negligently driven by defendant, as aforesaid, came at a high rate of speed toward plaintiff, who was driving his team of horses attached to a buggy on said highway, and his team of horses aforesaid became frightened at said electrical car so operated and ran away, throwing plaintiff from the buggy on to the ground, dragging him a great distance and inflicting great injuries to the person of this plaintiff." Plaintiff says: "That on the said 29th day of April, 1899, he was traveling eastward in a buggy drawn by two horses upon said public highway leading from the hospital for the insane toward the city of Lincoln; while traveling along said public highway about three hundred feet west of First street, and on what would be a westerly continuation of Van Dorn street, his team became frightened at defendant's electric car, run by defendant in a careless, reckless and negligent manner, at a high rate of speed, and plaintiff was, by the negligence of the defendant, thrown from his buggy, the team running away," etc.

The answer of the traction company was: First, a general denial; second, a plea of contributory negligence on the part of the plaintiff.

The traction company contends: First, that the petition does not state facts sufficient to constitute a cause of action and sustain the verdict. This question is not raised properly, either by the motion for a new trial in the district court, or the petition in error herein, therefore, we pass it without further consideration.

It is next urged that the court erred in admitting certain testimony found on pages 88 and 89 of the bill of exceptions. An examination of this evidence discloses that witness Martin, whose testimony was objected to, testified that the street car was going slowly, and it is stated that this evidence ought not to have been received because it did not sustain the allegations of negligence set forth in the petition, to wit, that the car was running at a high rate of speed. The witness Martin was called for the plaintiff

Moore, and it is difficult to see how the evidence thus given by him could in any manner prejudice the rights of the traction company. Therefore, the court did not err in admitting it. It is further contended that the verdict and judgment are not sustained by sufficient evidence. This presents the main question in controversy in this case. It will be observed that the allegation of negligence is that the car was negligently operated and driven at a high rate of speed. In other words, that the defendant's car was run in a careless, reckless and negligent manner, at a high rate of speed, toward the plaintiff's team, and thereby frightened the same, and caused them to run away and throw the plaintiff from his buggy, and thus injure him in the manner complained of. The record shows that the only persons who saw the accident were the plaintiff, Charles Martin, and the witnesses Bacon, Pacal, Mrs. Langdon and the motorman, Heitzman. We state briefly the substance of the evidence on that point. Moore testified as follows: "I was driving and the street car was coming right toward me when they came round the curve; they were coming round there at a pretty good jog. I can't say how fast they were running, but it was a pretty good jog, and they were coming right toward me. The team was walking along, and when they came a little farther along I began to look after the horses; the car was coming right toward them. Martin hallooed to them, 'Why don't you stop that car?' They still kept coming, and when they got right against me the horses jumped sidewise," etc.

Q. Now, a little bit more about one thing: You testified that Mr. Martin called out to the man running the car, to stop. What did he do then, did he stop the car?

A. I could not tell you; the car still came on, and the horses took my attention.

Q. Did he stop the car?

A. I could not tell you, they were coming right toward me, and I was watching the team. I could not tell whether they stopped the car or not. I could not say whether he stopped the car or not.

The witness Martin who was riding with Moore testified in substance as follows: We drove round by the asylum, and came onto the bridge by the park; when we got just over the bridge we didn't see anything ahead; we were going along and talking, and when we got about 275 yards from the bridge the street car made the turn coming west; we saw the car make the turn and it was coming round there pretty lively, and the team pricked up their ears and kind of pranced a little, the car kept coming on and we went about sixty yards, when the horses commenced to act up a little harder; we didn't go quite sixty yards, when they commenced to side off and get away from the car; the car was probably fifty or sixty yards away, then. The team was trying to go toward the ditch, and I seen there was going to be trouble. I says, we are going to have trouble here, this is a narrow road. He says, oh, I don't think we will, and I hallooed to the street car man to hold up. I says, stop the car a minute, and he did slack up the car, and the team began to quiet down a little, and then he commenced to kind of creep on, he was watching the team, and kept the car going on a kind of creep; we were about fifty or sixty yards from the car, when I hallooed to stop the car; and the motorman slowed up and stopped, and then started the car again kind of easy, and kind of creeping and watching the team at the same time. I didn't have time to halloo any more; just as the car got within two lengths of us the team dove right into the ditch; the car was going very slow. I yelled to the motorman as soon as I thought there was any danger; we didn't turn round, because we didn't think the team would be frightened; we didn't want to turn round, we didn't know whether the team would be frightened or not.

Heintzman, the motorman, testified in substance as follows: I had probably gone about forty or fifty feet around the curve, when I noticed the team shying and getting scared. I commenced stopping my car as quick as possible. . I was going around the curve, probably at the rate of four or five miles an hour. It is not possible to go fast

around the curve, not at full speed. I slowed up the car and cut off the current. I stopped the car and cut off the current as soon as I could after I noticed the team became frightened. The team finally got away from him; they left the road, I should judge, ten or fifteen feet ahead of the car, and ran over to the ditch, and about that time was when the dashboard gave way and threw Moore forward right onto the horses, and that started them to kicking and running faster, and then they went by the car and turned back into the road. All this time the car was standing still. I stopped the car as soon as I could.

The witness Bacon, who was riding in a buggy with Mrs. Langdon, a few feet behind Moore's team, testified in regard to the operation of the car, as follows: "I first noticed the street car about fifty or seventy-five feet before they made the turn. I saw them when they rounded the curve, and I could not tell how fast they were coming, but about the usual speed. When the car came round the curve, I guess I was about a block away; Mr. Moore was about three rods ahead of us. I noticed his team beginning to get frightened at the car as soon as it made the turn, and was coming directly toward us. Mr. Moore's team, at that time, was about 125 feet away from the car; the man in charge of the car shut down and stopped as soon as he could."

Mrs. Langdon's testimony was, in substance, that, after the car came around the curve, Mr. Moore's team was frightened and became fractious and was plunging; the car stopped, or came very slowly on round the curve. It slowed up; it appeared that the motorman had noticed the horses and he slowed up. I could not tell how much, but much slower than the car ordinarily runs. The car finally stopped; the team had almost reached the car when the car stopped.

Pacal, who was on the car, testified that it was stopped as soon as the horses showed fright.

This is all of the testimony bearing on the question of negligence, and it fails to support the allegations of the

plaintiff's petition, and does not show any negligence in the operation of the car. On the contrary, it conclusively shows that the car was going slowly, and as soon as the team showed fright the motorman slowed down, and finally stopped it. The petition contained no general allegation of negligence, neither was there any testimony offered to show negligence on the part of the company, other than in the operation of the street car. In the case of *Eastwood v. La Crosse City R. Co.,* 94 Wis. 163, it appeared that the plaintiff's horses became frightened at the noise made by the car while it was yet some distance away. As the car approached, the motorman saw that the horses were frightened, and turned off the current and applied the brake. The horses backed toward the sidewalk, throwing the rear end of the sleigh upon the track, where it was struck by the car, which could not be brought to a stop quick enough to avoid it. The car, when first seen, was about 175 feet away, and when the brakes were applied it was about 80 feet away. And the court held that these facts did not justify an inference that the motorman was negligent. This rule also is firmly supported by Nellis, Street Surface Railroads, 329; Booth, Street Railways, 401, and *Cornell v. Detroit Electric R. Co.,* 82 Mich. 495; *Terre Haute Electric R. Co. v. Yant,* 21 Ind. App. 487; *Flaherty v. Harrison,* 98 Wis. 559.

We are therefore constrained to hold that the evidence adduced on the trial was not sufficient to support the verdict and the judgment of the district court, and, for that reason, the judgment must be reversed and a new trial ordered.

Many other errors are assigned for the reversal of the judgment, but it is unnecessary to consider them. Upon another trial, all such errors, if any, will, without doubt, be corrected. For the foregoing reasons, we recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

GLANVILLE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.