## DUTY OF MOTORMAN UPON MEETING A FRIGHTENED HORSE.

[Circuit Court of Mahoning County.]

THE MAHONING VALLEY SOUTHEASTERN RAILWAY COMPANY v. HUGH H. HOUSTON.

Decided, March Term, 1907.

*Negligence—What Constitutes, Upon the Part of a Motorman—Upon Approaching a Frightened Horse—Respective Rights of the Driver and of the Car—Circumstances Control—Charge of Court as to Ordinary Care—A Charge Must not Only be Correct, but Must be Adapted to the Case.*

The failure of a motorman, when running the car at the ordinary speed, to stop or lessen its speed when observing that a horse approaching from the opposite direction is frightened, is not negligence, unless the circumstancess indicate that the horse has or will become unmanageable upon the approach of the car and that the driver or persons with him are or will be put in imminent peril.

COOK, J.; LAUBIE, J., and BURROWS, J., concur.

Error to Mahoning Common Pleas Court.

The son of the plaintiff was driving a horse and buggy along a public highway of this county. He was a young man full grown, of more than ordinary physical strength, and with him in the buggy was his sister, also fully grown. The highway was some fifty or sixty feet wide, level and in good condition. On one side of the highway was situated the electric railway of plaintiff, leaving a driveway of at least twenty-five to thirty feet for vehicles. The railway of plaintiff is an ordinary interurban railway for the carrying of passengers, and the cars the ordinary cars. As the car of plaintiff approached the horse and buggy, the horse, when about six hundred feet away from the car, showed evidence of fright, presumably from the approaching car, and the nearer he approached the car the more frightened he became, but was under full control of the driver until he got within fifty to seventy-five feet of the car, when he suddenly plunged to the side of the road opposite the track and then back again onto the track immediately in front of the car, and was killed.

The motorman saw the horse and buggy as it approached but did not reduce the power or put on the brake until the horse became entirely unmanageable and plunged to the side of the road, when he immediately shut off the power and put on the emergency brake, but too late to prevent the accident. The car was running from twelve to fifteen miles an hour, which was the ordinary speed. The young man testifies that he held a tight rein and was in full control of the horse until he got within fifty to seventy-five feet of the car.

The action was by the father, who owned the horse, to recover the value of the same.

The two primary grounds of error assigned are: First. The verdict is against the evidence. Second. The court erred in the charge to the jury.

As to the first ground, while there is some conflict in the evidence, yet it generally tends to support the facts as we have stated them and the question that is to be determined is: What is the duty of a motorman when he sees approaching him a frightened animal attached to a vehicle? Must he in all cases immediately bring his car under control so as to be able to stop it at any minute, or may he go on, relying on the presumption that the driver of the animal will retain control of the animal and no injury will be done?

"The rights of the driver of a horse and of the manager of an electric car meeting upon a highway are equal and each must use the way with a reasonable regard for the safety and convenience of the other." *Ellis* v. *Lynn & Boston Railway*, 160 Mass., 341.

What is a reasonable regard for the safety and convenience of the other? The authorities differ very materially on this question. Some hold that it is the duty of the motorman to immediately bring his car under control upon seeing a frightened horse approaching him no matter what the degree of fright might be, while others hold that if a horse becomes frightened at an approaching car and becomes unmanageable and runs away, injuring the driver and others, the company is not liable, unless the conduct complained of in the management of the car is attributable only to wanton or malicious disregard for the safety

of the driver and occupant of the vehicle. Note to Street Railway Reports, Vol. 2, pages 642, 643, 644 and 645.

We think both of these rules are too broad. Very much depends upon the circumstances of each particular case; the age and sex of the driver of the vehicle, the width of the road and its condition, and other circumstances that might be mentioned.

In a case like the one we are considering we think the true rule is: The failure of a motorman when running at the ordinary speed to stop or lessen the speed of a car, upon observing that a horse approaching from the opposite direction is frightened, is not negligence unless the circumstances indicate that the horse will become unmanageable if the car approaches, and that the driver or persons with him are in imminent peril. *Terre Haute Electric Railway Company* v. *Yant,* 21 Ind. App., 486 (51 N. E., 732) *Eastwood* v. *La Crosse City Ry. Co.,* 94 Wis., 163 (68 N. W., 651); *Flaherty* v. *Harrison,* 98 Wis., 559 (74 N. W., 360).

The case of *Eastwood* v. *La Crosse City Ry. Co., supra,* is nearly parallel with the one we are considering. In the opinion Mr. Justice Winslow says:

"The motorman of an electric car is not bound to slacken the speed or stop his car at the moment a horse upon the street within his range of vision begins to show signs of uneasiness; an inference of negligence is not justified from the motorman's failure to stop the car upon seeing that a team about one hundred and seventy-five feet in advance driven by a full grown man, was beginning to prance, where it appeared that the team was in a well traveled road at the side of a track nearly sixteen feet in width and was in perfect safety, and did not appear to be beyond the driver's control."

In *Flaherty* v. *Harrison, supra,* it was said:

"A street railway company can not be chargeable with negligence for the motorman's failure to stop or slacken the speed of his car upon seeing that a team at the side of the track were uneasy, where the driver had full control of them until at the instant when they dashed on the track in front of the car."

We are of opinion that the facts established by the evidence in this case are insufficient to sustain the verdict of the jury.

The objection made to the charge of the court is that the jury should have been instructed directly as to what was the duty of the motorman with regard to controlling his car upon seeing the frightened condition of the horse; in other words, the circumstances under which it was his duty to slacken the speed of the car or stop it. The jury was only instructed that is was the duty both of the motorman and the driver of the vehicle to use ordinary care under the circumstances of the case or the situation in which they were placed.

We think the counsel for defendant is right, and that it was the duty of the court to have instructed the jury as to what would constitute ordinary care under the particular circumstances of the case. Defendant in its requests called the court's attention directly to this question and, while they were too broad, yet they suggested to the court that it desired a specific instruction upon the real issue in the case. Had the court instructed the jury as to the duty of the motorman under the circumstances thus surrounding him and the care he should have used, it is very doubtful if this verdict would have been rendered.

In *Little Miami Railroad Co.* v. *Wetmore,* 19th O. S., 111, it is held:

"3. A charge to the jury, though not strictly objectionable in point of law, but which leaves the jury to draw an incorrect inference from facts in the case material to the issue, constitutes good grounds for a new trial, where it is reasonable to suppose, from a consideration of the whole evidence, that a different verdict would have been rendered if the jury had been fully instructed. The charge ought not only to be correct, but to be so adapted to the case and so explicit as not to be misconstrued or misunderstood by the jury in the application of the law to the facts as they may find them from the evidence."

The judgment of common pleas court, for the reasons that the verdict is against the evidence and for error in the charge, is reversed and the case remanded for a new trial.

*Arrel, Wilson & Harrington,* for plaintiff in error.
*Hine, Kennedy & Robinson,* for defendant in error.