COEL, Respondent, vs. GREEN BAY TRACTION COMPANY, Appellant.

*October 5—November 14, 1911.*

*Evidence: Weight: When testimony is negative: Street railways:*
*Injury to person at street crossing: Failure to give warning:*
*Excessive speed: Passing stationary car: Duty of motorman:*
*Proximate cause: Anticipation of injury: Causal relation: Con-*
*tributory negligence: Who are passengers.*

1. Within the meaning of the rule that positive testimony outweighs that which is negative, testimony is negative only when it tends to prove the nonexistence of a fact by a mere failure to observe or remember its existence. If it asserts an observation as to its existence and a recollection of what that observation was, a denial of its existence based thereon is as much affirmative evidence as is an assertion that it did exist.

2. Thus, where a policeman who was on a street car at the time it struck a person testified that he was positive no gong was sounded because as soon as the accident happened he remembered that fact, and that he remembered it because he had been on a number of cars causing injury and knew that the question of warning by bell or gong was an important one; and the person injured testified that he was listening for a car because he knew one might be coming at any time and that he heard no gong or bell—both witnesses being in a position to hear and their hearing normal,—the testimony of neither witness was merely negative. *Wickham v. C. & N. W. R. Co.* 95 Wis. 23, and *Ryan v. La Crosse City R. Co.* 108 Wis. 122, distinguished.

3. Evidence that at the time a street car upon a double-track railway passed another car which had stopped to discharge passengers at a street crossing in the business portion of a city, it went at least as fast as cars usually go in the middle of the block, and that after striking plaintiff at such crossing it could not be stopped until it had run 120 feet, warranted a finding that the passing car was run at a dangerous rate of speed.

4. In such a situation the passing car must be slowed up and be under full control, a sharp lookout must be kept by the motorman, and he must give warning by bell or gong or whistle of its approach.

5. Not only passengers alighting from the stationary car, but other travelers upon the street crossing, are entitled to observance

on the part of the street railway company of the rule above stated.

6. In the situation stated, both the street railway company and the passenger or traveler must exercise care commensurate with the danger, and neither has the right to assume that the other will take sufficient precautions to prevent injury.

7. To supply the element of reasonable anticipation essential to warrant a finding that a negligent act was the proximate cause of an injury, it is not necessary that an ordinarily prudent man ought reasonably to have anticipated the particular injury to the plaintiff or to any particular person, but it is sufficient that such a man ought reasonably to have anticipated that his conduct might probably cause some injury to another.

8. The fact that a street car was run at a high speed and without warning past another car on a parallel track which had stopped to discharge passengers at a street crossing in the business portion of a city, was sufficient to warrant a finding that the motorman ought reasonably to have anticipated some injury to someone.

9. Plaintiff alighted from a south-bound street car which stopped on the west track at a street crossing, and passed behind it towards the east track, listening for a north-bound car thereon. Hearing no gong or bell, he was proceeding to a point where he could look south behind the stationary car when, before reaching the eastern rail of the west track and while he was still some six feet away from the western rail of the east track, he accidentally stumbled and was precipitated so far forward toward the east track that he was struck by the projecting bumper on a north-bound car which was running past the crossing at a high rate of speed and without warning. His thigh bone was broken by the blow. *Held*, that the causal connection was such that the failure to give warning and the excessive speed of the car might properly be found to have been the proximate cause of the injury. *Holdridge v. Mendenhall*, 108 Wis. 1, distinguished.

10. Whether the plaintiff in such case was guilty of contributory negligence was a question for the jury. He was not bound as a matter of law to wait until the south-bound car had passed on before proceeding to look for a car on the other track.

[11. Whether or not the plaintiff, at the time of the accident, was still a passenger on the street railway, is immaterial and is not determined.]

Appeal from a judgment of the circuit court for Brown county: S. D. Hastings, Circuit Judge. *Affirmed.*

Action for personal injuries. The defendant maintained a double track street railway upon South Broadway street in the city of Green Bay, which runs north and south, and is intersected by West Mason street, at right angles, the latter running east and west. The intersection of these two streets is in the business portion of the city. The south-bound cars run on the west track and the north-bound on the east track. The depot of the Green Bay & Western Railway and other roads, sometimes called the Junction depot, is situated on West Mason street, half a block east of its intersection with South Broadway. Plaintiff boarded a south-bound car to go to the Junction depot. At West Mason street he got off and was struck by a north-bound car while going east behind and beyond the south-bound car. The defendant's negligence was alleged to consist in failing to sound the gong or alarm on the north-bound car while approaching the crossing where the south-bound car was discharging passengers, and in running said north-bound car at an excessive rate of speed while approaching and passing the stationary car.

The jury found (1) that the bell of the car that struck plaintiff was not rung as it approached the south-bound car; (2) that the north-bound car was run at a dangerous rate of speed; (3) that the south-bound car had stopped before plaintiff got off from it; (4) that the motorman in charge of the north-bound car was negligent in the manner in which he handled the car; (5) that said negligence was the proximate cause of plaintiff's injury; (6) that no want of ordinary care on the part of the plaintiff contributed proximately to his injury; and (7) that he was damaged in the sum of $3,700. From a judgment in favor of plaintiff entered on the special verdict the defendant appealed.

For the appellant there was a brief by *Greene, Fairchild, North & Parker,* and oral argument by *B. L. Parker.* To the point that it cannot be said that the motorman should reasonably have anticipated the plaintiff's sudden stumble which

resulted in the collision and injury, they cited, among other cases, *Stabenau v. A. A. R. Co.* 155 N. Y. 511, 50 N. E. 277; *Murray v. P. R. Co.* 61 N. J. Law, 301, 39 Atl. 648; *Holdridge v. Mendenhall,* 108 Wis. 1, 83 N. W. 1109; *Eastwood v. La Crosse City R. Co.* 94 Wis. 163, 68 N. W. 651; *Atchison, T. & S. F. R. Co. v. Calhoun,* 213 U. S. 1, 29 Sup. Ct. 321; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Baltimore City P. R. Co. v. Cooney,* 87 Md. 261, 39 Atl. 859. The stumble was an intervening cause which was not caused or in any manner controlled by defendant, and could not reasonably have been anticipated or foreseen by it. *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271.

For the respondent there was a brief by *Minahan & Minahan,* and oral argument by *V. I. Minahan.*

VINJE, J. The defendant challenges every finding of the jury except the one assessing damages. A brief statement of just how the injury occurred will aid in understanding the scope of such challenge. Plaintiff got off the south-bound car at West Mason street, as he claimed and as the jury found, after it stopped. He then proceeded eastward behind the car, listening for an approaching car from the south on the east track. He heard no sound of gong or bell, so he concluded to go east far enough to look south beyond the car he had just alighted from to see if a north-bound car was coming. When he was about a foot west of the east rail of the west track, the one upon which the car he had alighted from was standing, and just as he was about ready to stop to look for a north-bound car, he stumbled with his right foot, took a long step with his left foot to save himself, and another with his right foot, and then was struck by the north-bound car, resulting in a fracture of his thigh bone about half way between the hip and knee. The car did not run over him. It is quite certain that the bumper on the west side of the car

struck him.    The bumper is the extreme end of the body of
-the car, and consists of a piece of wood about six inches in
thickness, the bottom of which is about twenty-one and one-
fourth inches above the pavement.    It projects a foot and a
half beyond the fender.    The clear space between two cars
passing each other is two feet and two and a half inches, and
the distance between the inside of the west rail of the east
track and the inside of the east rail of the west track is five
feet nine inches.

Defendant, to sustain its claim that the evidence shows the
gong was sounded, relies upon the rule that the testimony of
its witnesses that it was sounded, being positive, outweighed
that of the testimony of plaintiff's witnesses, which it claims
was negative merely.    Lambert, the motorman of the north-
bound car, and Erdman, the conductor on the south-bound
car, testified that the gong of the north-bound car, as it ap-
proached the crossing, was sounded.    Opposed to this was the
testimony of four witnesses on behalf of plaintiff.    Miss
Cronan, who was on Broadway near West Mason street and
who observed the accident, said she heard no gong sounded.
Anton Jiore, a passenger on the same car with plaintiff, who
alighted at the Mason street crossing and was less than fifteen
feet from plaintiff at the time he was struck, testified he heard
no gong or bell ring.    Martin Burke, a police officer in Green
Bay for eleven years, was on the north-bound car and saw the
motorman set the brakes when the accident happened.    He
says he is positive that no gong was sounded, because as soon
as the accident happened he remembered that fact; and the
reason he remembered it was because he had been on a num-
ber of cars causing injury and knew that the question of warn-
ing by bell or gong was an important one.    He supposed the
injury must have been caused by the other car because no
gong was sounded on the one he was on.    His hearing was
good and his attention was not diverted.    The plaintiff testi-
fied that he was listening for a north-bound car because he

knew one might be coming at any time, and that he heard no gong or bell.

Conceding that the testimony of Miss Cronan and of Mr. Jiore is negative merely, the same cannot be said of that of Mr. Burke and of the plaintiff, especially that of the latter. Burke's mind dwelt upon the question of warning at the time of the accident. True, it did not begin to do so until plaintiff had been struck, but it did before the car came to a stop. So it must be fairly said that the question of warning by bell or gong was present in his mind at the time of the injury, and that his testimony that none was sounded was not negative merely. The same is true to a greater extent of plaintiff's own testimony. He was listening for a bell or gong because he realized that it was of the utmost importance for him to do so, as a car might be coming north at any time. He had nothing over his ears, his hearing was normal, and he was in a position to hear, and he listened and heard none. Under such circumstances, his testimony that no bell or gong was sounded rises above the level of mere negative testimony. Where the existence or nonexistence of a physical fact ascertainable by the senses is called to the attention of a witness at the time and place it is claimed to exist or not exist, and the witness is in a position to ascertain its nonexistence as readily as its existence, and he makes an observation to ascertain what the fact is, his testimony that it did not exist is not negative in the sense that it can be said as a matter of law that positive testimony outweighs it. Such testimony, opposed by testimony of its existence, raises an issue of fact for the jury. *Van Salvellergh v. Green Bay T. Co.* 132 Wis. 175, 111 N. W. 1120, and cases cited; *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342. Testimony can be said to be truly negative only when it tends to prove the nonexistence of a fact by reason of a mere failure to observe or remember its existence. If it asserts an observation as to its existence and a recollection of what that observation was, a denial of its

existence based thereon is as much affirmative evidence as is an assertion that it did exist. *Anderson v. Horlick's M. M. Co., supra.* The cases of *Wickham v. C. & N. W. R. Co.* 95 Wis. 23, 69 N. W. 982, and *Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W. 770, relied upon by defendant, are not in conflict with this rule. In each of those cases the witnesses who testified they did not hear the warning were paying no attention to the fact as to whether or not it was given at the time the accident occurred. None of them remembered that a warning was given. That was as far as their testimony went.

The jury found the north-bound car was run at a dangerous rate of speed as it passed the south-bound car. The defendant takes issue with this finding, not so much because the jury has found a higher rate of speed than the evidence warrants, but because they have denominated such speed dangerous. The undisputed testimony shows the car was going at least as fast as cars usually go in the middle of a block passing from one street to another. There is much evidence to show that it went faster; and it is an undisputed fact that if plaintiff was struck at the south crossing of West Mason street, as he claims, the car went a distance of 150 feet before it came to a stop, while if he was struck at or near the north crossing thereof, as claimed by defendant, the car passed him 120 feet before it was stopped. The motorman testified that he felt the car strike something, and that he then applied the brake. There was no snow on the ground, and there is no evidence that the rails were wet, or that the car was going down grade, or that the brake was out of order. The motorman said the slack was out of the brake and the power off when he struck plaintiff. Under such conditions, the fact that it required 120 feet or more in which to stop the car is, in the absence of any other adequate explanation, indicative of a high rate of speed. But assuming that the car passed the south-bound one at a rate of speed no greater than is usual

in the middle of a block—an assumption as favorable to the defendant as can possibly be indulged in under the evidence,—cannot such a rate of speed be called dangerous under the circumstances? The intersection of Broadway and West Mason street was in the business portion of the city, and the crossings were used not only by the patrons of the defendant, but by the public generally. The motorman could see the southbound car coming and had reason to anticipate that it would stop to discharge passengers, even if, as claimed by him, it had not come to a full stop. Under such circumstances it was his duty to slow up and have his car under complete control while passing the other car. He testified he knew the defendant had a rule that a car on a double track passing another standing still should be under full control, and by that he meant a car was to be run slow enough so that it could be stopped in but a few feet. This rule of the defendant company is but the rule of law applicable to such a situation. Not only must the passing car be under full control, but a sharp lookout must be kept by the motorman, and he must give warning by bell or gong or whistle of his approach. 2 Nellis, Street Railways, § 346; 2 Thomp. Comm. on Neg. § 1392; *Bremer v. St. Paul City R. Co.* 107 Minn. 326, 120 N. W. 382; *Pelletreau v. Metropolitan St. R. Co.* 74 App. Div. 192, 77 N. Y. Supp. 386, affirmed 174 N. Y. 503, 66 N. E. 1113; *Louisville R. Co. v. Hudgins,* 124 Ky. 79, 98 S. W. 275, 7 L. R. A. N. s. 152; *Chicago City R. Co. v. Robinson,* 127 Ill. 9, 18 N. E. 772, 4 L. R. A. 126. See, also, 4 L. R. A. N. s. 729, note.

It is not necessary to consider and determine the question whether or not plaintiff had ceased his relation as a passenger with the defendant at the time he was struck. He was on a street crossing, and his rights as a mere traveler on the street entitled him to an observance on the part of the defendant of the rule just stated. The reasons for the rule are obvious. When a car is standing still discharging passengers, those

Coel v. Green Bay Traction Co. 147 Wis. 229.

who have occasion to cross the tracks behind it have but a limited opportunity to see a car coming in the opposite direction. They are in close proximity to danger without adequate means of observation. True, such a situation imposes upon them the exercise of care commensurate with the danger of the situation. But neither the street railway company nor the passenger or traveler has a right to assume that the other will take sufficient precautions to prevent injury. Each must exercise care. Each is bound to anticipate that an injury under such circumstances may result to someone if care is not exercised. *Weber v. K. C. C. R. Co.* 100 Mo. 194, 12 S. W. 804, 13 S. W. 587, 7 L. R. A. 819. Hence the duty on the part of the company to keep a lookout, to give warning by bell, gong, or whistle of the approach of the car, and to have it under full control so that it may be stopped within a short distance should any one suddenly come in front of it. In view of the rule of law applicable to such a situation, it follows that the conceded rate of speed of the car was a dangerous one, and that the finding of the jury to that effect was in accord with the evidence.

The contention that plaintiff alighted from the car before it came to a full stop cannot be sustained, as there is ample evidence to support the finding of the jury. There is some conflict in the testimony as to whether or not the car was standing still when he got off from it, but even defendant's witnesses say it was standing still when he was struck.

The negligence of the motorman found in answer to the fourth question must have consisted in his failure to ring the bell and in running his car at a dangerous rate of speed, as no other negligence is alleged or proven in the case.

We come now to what we conceive to be defendant's main contention in the case, namely, that neither the failure to ring the bell nor the excessive rate of speed was the proximate cause of plaintiff's injury. It is claimed that the element of reasonable anticipation of injury is wanting; that there is no

causal connection between the failure to ring the bell or the high rate of speed and the injury, and that plaintiff's stumble was the proximate cause thereof.    The argument to support the alleged absence of the element of reasonable anticipation is based upon the erroneous assumption that it was necessary that defendant should anticipate that *plaintiff* would *stumble* and come in contact with the car in that manner.    Counsel say: "To hold the motorman to the doctrine of reasonable anticipation under the facts of this case it must be said that he should reasonably anticipate the sudden stumbling of this plaintiff resulting in the collision;" and again: "Nor can it be said that an ordinarily prudent man should reasonably anticipate that another will stumble and so be injured."    These extracts are fair samples of the argument on this question. The element of reasonable anticipation is not limited to such a narrow field.    It is not necessary that an ordinarily prudent man ought reasonably to have anticipated the particular injury to the plaintiff or to any particular person.    It is sufficient that such a man ought reasonably to have anticipated that his conduct might probably cause some injury to another.    *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271; *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 120 N. W. 858, and cases cited.    Hence it was within the field of reasonable anticipation that someone at some time might stumble or fall, or in some other natural manner suddenly come in front of a moving car as it passed a standing one discharging passengers.    From what has already been said on the subject of reasonable anticipation in connection with the question of the dangerous rate of speed, it follows that the jury were warranted in finding that the motorman ought reasonably to have anticipated some injury to someone as a probable result of his failure to ring the bell and the high rate of speed of the car.

It is argued that the failure to ring the bell had nothing to

do with the stumble or with the injury. Counsel say: "The object of ringing the bell on a street car is to warn people of the approach of a car, but plaintiff was warned, because he says he knew that a car might be approaching and that he was intending to look and see if one were in fact approaching." Here again is a singular confusion of ideas. Knowledge of the fact that a car may be approaching is quite different and distinct from knowledge of the fact that it actually is approaching. True, plaintiff knew that a car might be coming, and for that very reason he proceeded to ascertain if it was in fact coming. Had the bell been rung there would have been no necessity for his looking. The message of a ringing bell on an approaching car is not, "I may be coming at any time;" it is, "I am coming now." The jury might well say that it was for lack of such a message that plaintiff put himself in a position where a stumble would precipitate him against the car, and therefore a failure to give it was a producing cause of the injury. *Kujawa v. C., M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249.

Was there a causal connection between the high rate of speed of the car and plaintiff's injury? Defendant's counsel claim not. The gist of their argument is that it was plaintiff's stumble and not the speed of the car that caused his injury; that if plaintiff had not stumbled no injury would have resulted whether the car was traveling fast or slow. The car might have been at the place of the accident even if it had traveled at a slow rate of speed, and plaintiff might have been injured just the same whether the car was going fast or slow. The fact that the car was at a point where plaintiff could stumble into it did not constitute negligence. It was merely a condition that existed. It so happened that the car was there when plaintiff stumbled into it; it might have so happened had the car been under perfect control or standing still. We quite agree with counsel that the fact that the car was where plaintiff could stumble into it shows no causal connec-

tion between the speed of the car and the injury, and we quite agree that there is no force in the contention that had the car not been moving at so high rate of speed plaintiff could have had his stumble all by himself, as the car would not have been there.    We are further of the opinion that it is idle to specu- late upon what might have happened under other conditions. The question that confronts us is, What causal connection is there between the conditions actually existing and the in- jury?    Defendant says the excessive speed of the car did not injure plaintiff; it was the stumble, coupled with the pres- ence of the car at the time and place of such stumble, and it relies upon the case of *Holdridge v. Mendenhall,* 108 Wis. 1, 83 N. W. 1109, to sustain its position; and it cites other cases where it has been held that excessive speed was not the proxi- mate cause of the injury.    There are no doubt many such cases.    The *Holdridge Case* is perhaps as good an illustra- tion of them as can be found.    There a little boy was follow- ing behind a team in the middle of the block.    The court says:

"It was practically undisputed in the case that the boy un- expectedly stepped or ran in front of the car when only a few feet distant, and when it could not have been stopped, nor ef- fective warning given, before it ran over him, whatever its speed."    Page 5.

It is obvious that the injury resulting from being *run over* by a slow-moving car and a fast-moving car is likely to be the same.    But does it follow from that that a blow from a slow- moving car is likely to produce the same result as a blow from a fast-moving car?    Can it be said that the impact caused by a stumble in front of a car moving at the rate of ten to fifteen miles per hour is no greater than that caused by a car moving three or four miles an hour?    We think not.    In the case at bar plaintiff's injury was not caused by his being run over; for he was not run over.    He stumbled in front of the bum- per of the car and the blow broke his thigh bone.    It is evi- dent the severity of the blow would be in direct proportion to

the speed of the car. Well might the jury say that it was reasonably certain that if the car had been under complete control and moving at a proper rate of speed no broken leg would have resulted. The causal connection between the effect of a blow and the velocity of the object causing it seems obvious. It is natural and probable that a swiftly moving car would break a bone under the circumstances of this case. It is not natural and probable that a car under complete control would do so.

But it is urged that plaintiff's stumble, assuming that he was not guilty of contributory negligence, was a pure accident, and the defendant should not be held responsible for the result on that account. No one is seeking to hold defendant responsible for an accident. By failing to ring the bell it induced plaintiff to approach nearer the east track than he otherwise would. When near the track a stumble precipitated him upon it. So defendant's negligence in failing to ring the bell brought plaintiff within the field of danger, and when within that field it negligently inflicted upon him a blow severe enough to break his thigh bone owing to the dangerous rate of speed of the car. The element of accident, it would seem, is reasonably eliminated, and liability made to attach to negligence and not to accident.

The jury found that the motorman negligently operated the car and that such negligence was the proximate cause of the injury. The negligence, as already pointed out, consisted in a failure to ring the bell and in an excessive rate of speed. They therefore found that these two negligent acts combined constituted the proximate cause of the injury. That two negligent acts may concur to constitute the proximate cause of an injury is well settled. *Glettler v. Sheboygan L., P. & R. Co.* 130 Wis. 137, 109 N. W. 973.

The finding of the jury that plaintiff was not guilty of contributory negligence we think is supported by the evidence. The defendant claims he was negligent in not waiting till the south-bound car had passed on so that he could have an un-

obstructed view southward of the east track. We think no such duty devolved upon him. He got off first and he saw others about to follow him. He listened for a north-bound car and, hearing none, he proceeded to look for it, with the result already known. There was a distance of five feet nine inches between the nearest rails of the two tracks and a clear space of two feet two and a half inches between cars when they passed each other. Under such circumstances it was a question for the jury as to whether or not it was negligence to proceed far enough to look south beyond the standing car. It appears that the street had a brick pavement. Plaintiff could not reasonably anticipate that he would stumble upon it at that particular time and place. *Koutsky v. Forster-Whitman L. Co.* 146 Wis. 425, 131 N. W. 1001. He says he is unable to state what occasioned the stumble and no one else has succeeded in discovering its cause, so we must regard it as a pure accident.

*By the Court.*—Judgment affirmed.