TAYLOR, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY
COMPANY, Appellant.

*April 6 — April 25, 1899.*

*Railroads: Personal injuries: Improper remarks of counsel: Setting aside
verdict: Excessive damages: Passion and prejudice.*

1. In an action to recover for personal injuries sustained by plaintiff, it
appeared, among other things, that she was a woman sixty-four
years old, and up to the time of the injuries was strong, vigorous,
and able bodied; that thereafter and up to the time of the trial she
was in a helpless condition, and suffered great pain caused by such
injuries. The negligence of the defendant was admitted. *Held,*
that remarks made on the trial by counsel for plaintiff, in effect,
that the jury could not make good her sufferings, or restore her
to her health and former vigor, and that the court room filled with
gold could not and would not do it, were out of place and tended
to excite the sympathies and passions of the jury and secure an
exorbitant verdict.

2. In tort actions, a court is not at liberty to set aside a verdict on the
ground that it is excessive, unless it is so excessive as to create the
belief that the jury have been misled either by passion, prejudice,
or ignorance.

3. Considering conflicting evidence as to the permanence of her injuries
most favorably to plaintiff, in view of her advanced age, the jury's
award of $12,000 as damages, reduced by the trial court to $10,000,
is *held* excessive, and the remission of all in excess of $7,000 is made
a condition of judgment in plaintiff's favor.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The facts are stated in the opinion.

For the appellant there was a brief by *Fish, Cary, Upham
& Black,* and oral argument by *John T. Fish.*

For the respondent there was a brief by *O'Connor, Ham-
mel & Schmitz,* and oral argument by *A. J. Schmitz.*

CASSODAY, C. J.    This action was brought to recover dam-
ages for personal injuries sustained by the plaintiff in a rear-

end collision at West Chicago on the night of June 29–30, 1897. Issue being joined and trial had, the jury returned a verdict for the plaintiff for $12,000, and, on motion for a new trial, in part upon the ground that the damages were excessive, the court ordered that, unless the plaintiff remit from the verdict $2,000, a new trial should be granted, but in case of such remission the verdict should stand at $10,000; and, the plaintiff having made such remission, judgment was entered thereon for $10,000 and costs, from which the defendant brings this appeal.

It appears from the uncontradicted evidence that June 29, 1897, the plaintiff purchased of the defendant a first-class passenger ticket from Appleton, by way of Chicago, to San Francisco; that the defendant received the plaintiff in one of its passenger cars at Appleton; that while the plaintiff, as such passenger, occupied a berth in one of defendant's sleeping cars, and while the train was on the company's track near a station known as West Chicago, about thirty miles from Chicago, the train upon which the plaintiff was so riding collided with, and was run into at the rear end by, another passenger train of the defendant, and the car in which the plaintiff was so riding was thereby telescoped, and the plaintiff was crowded and for some time firmly pinned in and held under the broken timbers and other materials of which the car was constructed; that she was unable to extricate herself therefrom, and was firmly held under the débris until the broken timbers and other material could be removed by persons engaged in clearing away the wreck; that by reason thereof the plaintiff was severely and seriously injured; that at the time of the trial (one year after the injury) she was still in a helpless condition, and suffered great pain, caused by such injuries; that up to the time of receiving such injuries she was a strong, vigorous, and able-bodied woman; that it was found that the muscles of her left leg were badly bruised, her knees injured so as to cause

Taylor vs. Chicago & Northwestern R. Co.

her great pain, and she complained of pain in her head, back, and knee; that after she had rested half an hour, and found no bones broken, and believing that she had only been severely jammed in and crowded between the timbers, she was assisted into another car, and continued her journey to California; that from the place of the collision to Council Bluffs she occupied a sleeper; that at Council Bluffs she stayed overnight at the railway station; that she was assisted from the car to the hotel, and the next morning from the hotel to the car; that she was then still suffering a great deal of pain, and could not get her hands together, nor to her head, but proceeded on her journey; that her pain continued to increase, especially in her back; that at Ogden, Utah, she had to be assisted on and off the train; that she reached her brother's, in California, and remained there about ten weeks, but was helpless, and so continued, and her pains continued, principally in her back, side, back of her neck, shoulder, and in her head; that she is unable to get up or down stairs without being carried; that the reason she cannot walk is because her back is weak and painful; that the use of her arms or shoulders hurts her back; that, in attempting to walk, she shuffles her feet along; that since the injury she has, at times, had bloody discharges of the bowels. The negligence of the defendant is admitted, and the important question for consideration is the measure of damages.

The defendant contends that the damages allowed are grossly excessive, and insists that remarks of the plaintiff's counsel on the trial, and to which timely objections and exceptions were taken, had the direct tendency to unduly inflame the passions of the jury so as to produce the result. The counsel for the plaintiff, in his opening statement to the jury, stated, in effect, that the pain was such as no member of the jury, himself, or the defendant's counsel would suffer any length of time. Upon an objection being sustained,

Taylor vs. Chicago & Northwestern R. Co.

counsel, among other things, added: "I am simply saying, and it is all I want to say, that upon this question of damages, when all the proof is in here,— proof which it is your duty, under your oaths, to consider without fear and without favor,— that you will not say this woman is asking too much when she says she measures her damages in the sum of even $25,000." The defendant having objected to the remarks of counsel in his closing argument, as to the jurors putting themselves in the place of the plaintiff, which objection was overruled, counsel for the plaintiff continued: "I did not say what counsel claims I said. What I stated was that each of the jury should keep in view and in mind the evidence, fully, as it was produced here on the witness stand, and by that and from that judge; that under the law the plaintiff is entitled to full compensation for the pain and suffering she endured, past and future, on account of the injuries received by her, and on account of any physical and mental disability she suffered, but by that, of course, we do not mean that any amount of money the jury might give her by their verdict would lessen the suffering she has endured since her injury, on account thereof, nor restore her health and former vigor; that no amount of money could place her back where she was before receiving the injuries complained of, and that the jury was not able to make good her sufferings; that, if this court room was filled with gold, that could not and would not pay it; and that he did not expect anything like that from them. I stated that the jury were not able to make good all her damages, if the room was filled with gold; that could not and would not pay it, and we don't expect it would. We don't expect anything like that from them." Such remarks were manifestly out of place, and could have been made for no other purpose than to excite the sympathies and passions of the jury, in order to secure an exorbitant verdict. While no one would willingly sustain severe personal injuries in order to be compensated

Taylor vs. Chicago & Northwestern R. Co.

in money, yet courts and juries must deal with such questions in a deliberate and practical way. *Heddles v. C. & N. W. R. Co.* 74 Wis. 259. It is not a case calling for punitory damages, but only compensatory damages. This court has frequently condemned such attempts of counsel to increase damages, and stated the rules which should govern counsel in addressing juries. *Waterman v. C. & A. R. Co.* 82 Wis. 615, 635–639; *Gillen v. M., St. P. & S. S. M. R. Co.* 91 Wis. 633; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 361, 362. It is unnecessary to repeat what has been said in these cases, and the cases therein cited on the subject.

In actions for tort, where there is no fixed legal rule as to the amount of compensation, a court is not at liberty to set aside a verdict on the ground that it is excessive, unless it is so excessive as to create the belief that the jury have been misled either by passion, prejudice, or ignorance. *Donovan v. C. & N. W. R. Co.* 93 Wis. 378. The trial court was manifestly of the opinion that the amount of the verdict was the result of passion or prejudice; otherwise, that court would not have reduced the same. Although the nervous shock was evidently severe, yet the evidence of the defendant's experts is very strong that the injuries are not permanent. On the other hand, the plaintiff's medical experts testified to the effect that her injuries are permanent, and that she will suffer more or less from them as long as she lives. It is urged by the defendant that such experts base their opinion, in part, upon facts not established by evidence. This may be true, to some extent. No sufficient exceptions, however, appear to have been taken to such testimony. For the purposes of this appeal, we assume that there is evidence sufficient to support a finding that the plaintiff's injuries were permanent. Still we are forced to the conclusion that the damages are excessive, even as reduced by the trial court. In the *Gillen Case*, cited, the jury returned a verdict of $1,500. The trial court gave the

Taylor vs. Chicago & Northwestern R. Co.

plaintiff the option of reducing it to $750. This court thought that was $400 in excess of what it should be, and so gave plaintiff the option of further reducing it that amount or taking a new trial. The irresistible objection to maintaining this judgment is the fact that the plaintiff was more than sixty-four years of age at the time she was injured. The large verdicts which have been sustained by this court have been in favor of very much younger persons. In the *Heddles Case*, cited, the plaintiff was a little boy, crippled in both legs for life, and on the first trial he got a verdict of $30,000, which we held to be considerably in excess of what he was entitled to recover, and on the second trial a verdict for $18,500 was sustained. 74 Wis. 240, 243, 259; *S. C.* 77 Wis. 229, 235, 236. In the *Waterman Case*, cited, the plaintiff was comparatively a young man, and the injuries left him a total wreck. He recovered a verdict of $25,000, which this court, owing to peculiar circumstances, gave him the option to reduce to $20,000. 82 Wis. 622, 638, 639.

Considering the evidence most favorable to the plaintiff, yet, in view of her advanced age, we think she should not be allowed to recover, as damages, more than $7,000.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial, but with the option on the part of the plaintiff to be exercised within thirty days after the *remittitur* from this court is filed in the trial court, to remit, in writing, from the verdict, all damages in excess of $7,000, and file such remission with the clerk of the trial court, in which event judgment is to be entered thereon for the plaintiff for $7,000 damages, and the costs and disbursements in the circuit court.