WALKER, Respondent, vs. SIMMONS MANUFACTURING COMPANY, Appellant.

*April 10—April 30, 1907.*

*Master and servant: Injury to servant: Unguarded shafting: Duty to furnish safe place: Evidence of relation of employer and employee: Assumption of risk: Insufficient light: Court and jury: Instructions: Special verdict: Waiver of defects or omissions: Excessive damages.*

1. In an action for injuries to an employee caused by an unguarded set-screw projecting from a revolving shaft in defendant's factory, the evidence is *held* to sustain findings in the special verdict to the effect that plaintiff at the time of the accident was working at a place in which he was authorized by defendant to do his work; that the unguarded set-screw was so located as to be dangerous to plaintiff at his work in that place; and that plaintiff did not assume the risk and was not guilty of contributory negligence.

2. The set-screw being so located as to be dangerous to employees while doing their work, it was the duty of defendant, under sec. 1636*j*, Stats. (1898), to securely guard it.

3. Evidence tending to show that plaintiff when injured was at work in one of the departments of defendant's factory, the working place and the necessary machinery and appliances being furnished by defendant; that he was paid by the piece, but that defendant hired the men who assisted him, and paid them out of his earnings; and that plaintiff and the men were subject to the supervision and direction of defendant's superintendent, and were in fact in some cases directed in their work by him, is *held* sufficient to sustain a verdict to the effect that the relation of employer and employee existed.

4. One who furnishes to another a working place, machinery, and appliances with which to do his work owes to the latter the duty of furnishing him with a reasonably safe place in which to do his work.

5. In submitting for special verdict the question whether the working place furnished by defendant was a reasonably safe one, the jury were instructed that if the shafting in that place was "so located as to be dangerous to plaintiff in the discharge of his duties in the line of his employment at the time of the injury" they should answer the question "No." *Held,* that a further statement of what the law required in respect to guard-

ing dangerous shafting did not render the instruction preju-
dicially erroneous as informing the jury of the effect of their
finding; and, it being undisputed that the shafting was not
guarded at any time, the jury could not have been misled.

6. The words, in such instruction, "in the line of his employment
at the time of his injury" could not have misled the jury, but
must have been understood as having reference to the perform-
ance of his ordinary duties under his employment.

7. Failure in the charge to distinguish between furnishing a safe
place originally and thereafter exercising ordinary care to
keep it reasonably safe, and failure to submit in the special
verdict the question whether defendant originally furnished a
safe place and thereafter used ordinary care in maintaining it,
cannot be complained of by appellant where a proposed ques-
tion on that subject was excluded from the verdict upon his
objection and insistence that it was not a material fact to be
submitted to the jury.

8. In an action for injuries to an employee caused by the catching
of a bed spring which he was handling upon a projecting and
unguarded set-screw upon a line of overhead shafting in de-
fendant's factory, the insufficiency of light, if there was such,
at the time and place in question was a fact properly to be
considered by the jury in determining whether plaintiff assumed
the risk, but alone was not sufficient to charge him with as-
sumption of unknown dangers.

9. An award of $5,000 for injuries to a laborer forty years old
which left his hand in a mutilated and practically useless con-
dition, is held not excessive.

APPEAL from a judgment of the circuit court for Kenosha
county: J. J. FRUIT, Judge. *Affirmed.*

This action was brought to recover for personal injuries sus-
tained by plaintiff on the 22d day of March, 1905, while en-
gaged in defendant's factory at Kenosha, Wisconsin. The
complaint charges that the plaintiff was in the employ of the
defendant and engaged in the work of receiving and piling
bed springs in the storeroom of defendant's factory; that it
was the duty of the defendant to provide plaintiff with a safe
place to perform his work; that defendant failed in this re-
gard, in that it negligently permitted a defective, worn, and
improper set-screw to be used, which set-screw fastened an
iron collar around a revolving shaft, and neglected to cover the

shaft, set-screw, and collar with safeguards to prevent injury to plaintiff, as provided by sec. 1636$j$, Stats. (1898), and acts amendatory thereof, and negligently permitted the set-screw to become loose and project beyond the outer surface of the collar three fourths of an inch, and negligently and without warning to plaintiff permitted the collar and set-screw to slide along and upon the shaft several feet away from the arm where the collar was attached to hold the arm firmly, and negligently caused the room and premises where plaintiff was performing his duty to be insufficiently and improperly lighted. The complaint further alleges that on the day named, and while plaintiff was in the performance of his duty piling bed springs under and near the shaft to which said set-screw and collar were attached, and without any warning to the plaintiff or negligence on his part, one of the wire springs caught on the projecting set-screw, and plaintiff's hand was caught between the bottom of the bed spring and the shaft, which caused the injury.

The answer denies the material allegations of the complaint, and further avers that the presence, location, and nature of the set-screw and collar were open, obvious, and well known to the plaintiff, and that he assumed the risk and was guilty of contributory negligence.

At the close of the testimony defendant moved for a directed verdict, which was denied. The jury returned the following verdict:

"(1) On March 22, 1905, at the time of the accident to the plaintiff, was the relation existing between the plaintiff and the defendant that of employer and employee? A. Yes. (2) At the time of receiving the injuries of which he complains, was the plaintiff engaged in work at a place in which he was authorized by the defendant to engage in the performance of such work? A. Yes. (3) If you answer the second question 'Yes,' then was such place so furnished by the defendant a reasonably safe place in which to do his work? A. No. (4) If you answer the third question 'No,' then was

such failure to furnish a reasonably safe place the proximate cause of the plaintiff's injury? *A.* Yes. (5) Was there any want of ordinary care on the part of the plaintiff which contributed to his injury? *A.* No. (6) If the court shall finally determine the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $5,000."

Motions were made for judgment in favor of the defendant notwithstanding the verdict and also that the verdict be set aside and a new trial granted. Judgment was rendered in favor of plaintiff on the verdict, from which this appeal was taken.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

For the respondent there was a brief by *Ernest A. Kehr* and *N. L. Baker* and *W. J. Zimmers,* and oral argument by *Mr. Kehr* and *Mr. Baker.*

KERWIN, J. Several errors are assigned by appellant, and so far as necessary to the disposition of this appeal will be treated in their order.

1. It is insisted that a verdict should have been directed for defendant on the ground that the evidence established conclusively that the defendant was not guilty of negligence and that plaintiff was guilty of contributory negligence and assumed the risk. In this behalf it is insisted that plaintiff had been at work on the premises for several years and was familiar with them and aware of the danger; that he was not at the time of the injury within the territory assigned to him, but was in a place unauthorized by defendant; that he was an independent contractor, and hence the relation of master and servant did not exist; that the set-screw upon which plaintiff was injured was nine feet above the floor and not in any way dangerous to employees, and hence defendant was under no obligation to guard it.

It appears from the evidence that plaintiff had been em-

ployed by defendant some four years before his injury, but
his employment was such as not to bring him in close contact
with the machinery in the factory or familiarize him with it.
His first employment was at the knotter, and at such other
work as was required of him until the end of the year 1902,
after which he had charge of the piling of the wire bed springs
under the supervision of the superintendent of the spring de-
partment. In this connection his duties were to receive wire
beds or bed springs which came from another department of
the factory and prepare them for shipment by pressing them
together with a press and piling them up in a storeroom as-
signed by defendant for that purpose. The shipping room in
which plaintiff was injured was 152 feet north and south and
171 feet east and west. There was a line shaft running north
and south and attached to posts by hangers. This shaft was
ninety-three feet from the west end of the building and thirty-
five feet from the nearest wall east. It was nine feet above
the floor, and ran in a hanger which was eight or nine inches
towards the west from a post to which it was bolted, and was
about three feet from the ceiling. At the time of the injury
the shaft was making about 285 revolutions per minute. The
entire floor on which plaintiff was at work at the time of the
injury was used for storing the finished product, springs,
wood frames, wire mattresses, and all wire spring beds. At
the place of injury the shafting ran in a bearing or box, and a
collar and set-screw were originally set and belonged on the
south side of the box or hanger tight against the box. This
collar and set-screw were put in place at the time the shaft
was hung.

There was a partition along the line of posts immediately
east of the shafting, east of which was the territory which was
ordinarily occupied by the plaintiff for the performance of his
work; but at the time of the injury he was not within this
allotted territory, but was piling spring mattresses on the west
side of the partition and under the shaft in question, and,

while lifting a mattress to place it on top of others under or beside the shaft, it was caught by the set-screw, and his hand, together with the mattress, drawn around the shafting, in consequence of which he sustained the injuries complained of. There is evidence tending to show that at the time of the injury the set-screw extended some three fourths of an inch beyond the collar, and that the collar and set-screw had moved some two feet or more away from the bearing or box where originally placed, but just how, or when, so removed does not appear. There is also evidence that while plaintiff ordinarily used the territory allotted to him he also used the territory under the shaft in question, where he received the injury, with the permission of the defendant's superintendent, and that he was not familiar with the set-screw and did not know that it was located so as to be dangerous; that at the time of the injury the territory allotted to him was well filled and he was forced to do his work at the place where he received the injury. It also appears from the evidence that it was difficult to see the set-screw when the shaft was in motion.

We think it very clear that there is ample evidence to show that plaintiff was at the time of the injury occupying the space in question under the revolving shaft and set-screw with the assent of the defendant and without knowledge of the dangers to which he was exposed. Whether this shafting was so located as to be dangerous to employees in the discharge of their duties depends upon the facts and circumstances of the case, and upon the evidence we think it clear that the question of whether it was or was not so located as to be dangerous to plaintiff in the discharge of his duty was a question for the jury. *Kreider v. Wis. River P. & P. Co.* 110 Wis. 645, 86 N. W. 662. We think it equally clear from the evidence that it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence or assumed the risk. *Hocking v. Windsor S. Co.* 125 Wis. 575, 104 N. W. 705.

Sec. 1636*j,* Stats. (1898), makes it the duty of the owner or manager of every place where persons are employed to perform labor to securely guard belting, shafting, and gearing which are so located as to be dangerous to employees in the discharge of their duty. But it is claimed by counsel for appellant that the shafting in question here was not so located as to be dangerous, and, besides, the plaintiff was outside of his allotted territory, and when injured was at an unauthorized place; but, as before observed, the testimony is ample to show that plaintiff was engaged in the discharge of his duty and at an authorized place when injured. This being so, the proof amply establishes that the unguarded set-screw was dangerous to employees working in the position in which plaintiff was at the time of the injury. Under such circumstances the defendant was bound to guard the dangerous machinery. *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563. But it is argued that the set-screw and danger were open and obvious, and that knowledge of the dangerous condition must be imputed to plaintiff; hence he assumed the risk. The evidence does not warrant this conclusion. Plaintiff testified that he had no knowledge of the dangerous condition, that it was difficult to see the set-screw when the shaft was in motion, and that it could not be determined whether the screw projected beyond the collar in such manner as to be dangerous. We think it very clear from the evidence that it cannot be said as matter of law that plaintiff knew the danger or appreciated the risk. *Hocking v. Windsor S. Co., supra; Kreider v. Wis. River P. & P. Co., supra.*

It is insisted that the court should have directed a verdict for defendant because plaintiff was an independent contractor, and that the supervision retained by defendant over plaintiff was not such as to create the relation of employer and employee. This question was submitted to the jury and they found that such relation existed at the time of the injury. The evidence tends to show that plaintiff was at work

in one of the departments of defendant's factory and under the supervision of defendant's foreman, and that defendant furnished the working place and machinery necessary for plaintiff to do his work, and hired the men who assisted plaintiff, fixed their wages, and paid them out of plaintiff's earnings. But these men, as well as plaintiff, were subject to the supervision and direction of the superintendent of defendant, and in fact were in some cases directed in their work by him. We think it clear that there was ample evidence to support the verdict that the relation of employer and employee existed. 1 Shearm. & Redf. Neg. (5th ed.) § 164; *Cunningham v. Int. R. Co.* 51 Tex. 503; *Neimeyer v. Weyerhaeuser,* 95 Iowa, 497, 64 N. W. 416; *Barg v. Bousfield,* 65 Minn. 355, 68 N. W. 45. Exception is taken to certain parts of the judge's charge to the jury upon this question, but we are unable to discover any error in the charge in this regard, and think the question as to whether the relation existing between plaintiff and defendant was that of employer and employee was fairly submitted to the jury. Moreover, it is without dispute that defendant furnished plaintiff a working place, machinery, and appliances with which to do his work, and under such circumstances the defendant owed plaintiff the duty of furnishing him with a reasonably safe place in which to do his work. 1 Thomp. Comm. on Neg. § 679; *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418; *Carlson v. Stocking,* 91 Wis. 432, 65 N. W. 58; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041; *Wertheimer v. Saunders,* 95 Wis. 573, 70 N. W. 824; *Johnson v. Spear,* 76 Mich. 139, 42 N. W. 1092; Wood, Mast. & Serv. 699, § 337; *Coughtry v. Globe W. Co.* 56 N. Y. 124; *Conlon v. Eastern R. Co.* 135 Mass. 195; *Kelly & Sons v. Howell,* 41 Ohio St. 438; *Ferris v. Aldrich,* 58 Hun, 610, 12 N. Y. Supp. 482; *Stevens v. United G. & E. Co.* 73 N. H. 159, 60 Atl. 848.

We are cited by counsel for appellant to *Harris v. McNamara,* 97 Ala. 181, 12 South. 103; *Forsyth v. Hooper,* 11

Allen, 419; *Hexamer v. Webb,* 101 N. Y. 377, 4 N. E. 755; and *Ziebell v. Eclipse L. Co.* 33 Wash. 591, 74 Pac. 680. These cases are not out of harmony with the doctrine heretofore laid down and cases cited. In *Harris v. McNamara, supra,* the master reserved no authority over the employee, furnished no tools or appliances, and the means and details of the work were subject to the exclusive management and control of the servant. In *Hexamer v. Webb, supra,* plaintiff was clearly an independent contractor. The mode and manner in which his work was to be done and the means to be employed in its accomplishment were left to his skill and judgment. Everything connected with the work was wholly under his direction and control and no right reserved to the defendant, and under the engagement the relation of master and servant clearly did not exist. *Forsyth v. Hooper, supra,* also presents a case of an independent contractor. There the person employed was engaged under an entire contract for a gross sum, and in the independent operation not subject to the control of his employer, and the court said:

"The question in these cases, whether the relation be that of master and servant or not, is determined mainly by ascertaining from the contract of employment whether the employer retains the power of directing and controlling the work, or has given it to the contractor."

*Ziebell v. Eclipse L. Co., supra,* presents a case where defendant, owner of a mill, entered into a contract whereby an experienced manufacturer contracted to take charge of the mill, employ and pay all laborers, make all necessary repairs, and receive a stipulated sum per thousand for shingles manufactured, and it was held that the manufacturer occupied the position of an independent contractor.

After a careful examination of the cases cited by appellant we are unable to see that they are applicable to the facts in the case before us, or support the contention of counsel that the relation existing between plaintiff and defendant here was not that of employer and employee.

2. Error is assigned in the charge and refusal to charge. Respecting the third question of the special verdict, as to whether the place furnished by defendant was a reasonably safe place, the court charged:

"The law requires that the employer shall securely guard or fence shafting which is so located as to be dangerous to employees in the discharge of their duties, and if you find that the shafting in question, under all the facts and circumstances proven, was so located as to be dangerous to the plaintiff in the discharge of his duties in the line of his employment at the time of the injury to him, you should answer the question 'No.'"

This charge is criticised on the ground that the court told the jury the effect of their answer. True, the court told the jury what the law required respecting the guarding of dangerous shafting, but did not tell them the effect of a finding either way upon this question. Besides, it is undisputed that the shafting was not guarded at any time. The jury could not have been misled under these circumstances by the statement of the court respecting the duty to guard dangerous shafting, in view of the whole record and the testimony properly and necessarily introduced upon this subject.

The words in this portion of the charge, "in the discharge of his duties in the line of his employment," are also criticised. It is insisted that these words did not convey to the jury the idea that at the time of the injury the plaintiff was performing his ordinary duties under the employment; but we think the jury could not have been misled by the use of the words "in the line of his employment at the time of the injury," but must have understood the words as having reference to the performance of his ordinary duties under his employment. The charge is further criticised because it fails to distinguish between furnishing a safe place originally, and thereafter exercising ordinary care in maintaining it in a reasonably safe condition, under the doctrine of *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48. It is insisted

that the charge and the verdict submitted to the jury presented the question merely whether the defendant furnished a reasonably safe place at the time of the injury, and that the question whether a reasonably safe place was originally furnished had never been submitted to the jury, nor whether defendant knew or had cause to know that the place became unsafe. So it is claimed that the ultimate fact in issue as to whether or not defendant originally furnished a reasonably safe place and thereafter used ordinary case in maintaining it was never submitted to the jury. But it appears from the record that counsel for plaintiff at the time the special verdict was made up requested that the question: "If you answer the third question 'No,' then was the defendant guilty of any want of ordinary care in furnishing plaintiff such place in which to do his work?" be included in the special verdict and submitted to the jury, and counsel for defendant advised the court that such question was unnecessary in the case. So, even if it be conceded that this fact should have been submitted to the jury, it is not for appellant to complain, since it was kept out upon his objection and insistence that it was not a material fact to be submitted to the jury.

On the fifth question, as to whether or not there was any want of ordinary care on the part of the plaintiff which contributed to his injury, the appellant excepted to the charge and refusal to charge as requested. The court charged:

"In considering and answering the fifth question you are instructed that, whatever the condition of the light may have been at the time and place of the accident to the plaintiff, that was a condition which he could at once perceive and was bound to take notice of when he went there. He was bound to use his senses and his faculties to observe such apparent condition. And if you find that the light at that time and place was not reasonably sufficient, but nevertheless the plaintiff assumed to work there, and by reason of such insufficiency of the light was injured, this you may consider together with all the other facts and circumstances shown in the evidence as bearing upon the plaintiff's contributory negligence."

Walker v. Simmons Mfg. Co. 131 Wis. 542.

The court further charged the jury that in considering this question they were instructed that plaintiff was bound to exercise "his senses, his experience, and his general knowledge of the place in which he was performing his work, in order to avoid danger which he either knew, or ought to have known in the light of his age, experience in the same room and building in which he had been engaged for over three years before he was injured, and his general knowledge and experience in life; and if he failed to do so and thereby contributed even in a slight degree to the injuries which he received, your answer to the fifth question must be 'Yes.'"

Upon the appellant's request the court refused to charge as follows:

"In considering and answering the fifth question you are instructed that, whatever the condition of the light may have been at the place and time of the accident to the plaintiff, that was a condition which he could at once perceive and was bound to take notice of when he went there. He was bound to use his senses and his faculties to discover such apparent conditions. And if you find that the light at that time and place was not reasonably sufficient, but nevertheless the plaintiff assumed to work there, and by reason of such insufficiency of the light was injured, he must be held to have assumed the risk of working there with such insufficient light and to have assumed the danger of working under such condition, and your answer to the fifth question should be 'Yes.'"

This refusal is assigned as error, and in support of this assignment counsel for appellant relies upon *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049. But it will be seen that in the last-named case the want of light proximately contributed to the injury, while in the case before us it is clear from the evidence that the insufficiency of light was not the proximate cause of the injury. The question of insufficiency of light in the instant case was a fact properly to be considered in determining whether plaintiff assumed the risk, but alone was not sufficient to charge plaintiff with assumption of unknown dangers. *Kucera v. Merrill L. Co.* 91 Wis. 637, 65

N. W. 374. The charge given by the court, therefore, was proper and sufficient upon the subject, and appellant was not prejudiced by the refusal to charge as requested. The plaintiff assumed no risk respecting unknown dangers or those which by the exercise of ordinary care and prudence he could not have ascertained. It does not appear from the evidence that even if the factory was properly and sufficiently lighted he would have known the dangerous condition of the set-screw which caused the injury. He could not determine whether the light was sufficient to guard him against unknown dangers. If the shaft had been properly guarded, as plaintiff had a right to believe it was, then the light was sufficient. So in any aspect of the case there was no error in the refusal to charge as requested. The sufficiency of the light was not upon any theory of the evidence the proximate cause of the injury, nor was the evidence of insufficiency of light alone sufficient to support a verdict that plaintiff assumed the risk. *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418; *Kucera v. Merrill L. Co.* 91 Wis. 637, 65 N. W. 374.

3. It is claimed that the damages are excessive. Plaintiff was forty years of age, a laborer, and capable of earning good wages. The injuries were serious and the jury assessed his damages at $5,000, and the court below refused to hold the verdict excessive. The plaintiff's hand was badly burned by the friction while being drawn around the shaft. He lost the first, second, and fourth fingers and also part of the back of the hand. The third finger was rendered stiff. The injury left the hand in a mutilated, disfigured, and practically useless condition. Upon the whole record we cannot say that the verdict is excessive. *Berg v. C., M. & St. P. R. Co.* 50 Wis. 419, 7 N. W. 347; *Taylor v. C. & N. W. R. Co.* 103 Wis. 27, 79 N. W. 17; *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, 4 N. W. 399; *Karasich v. Hasbrouck,* 28 Wis. 569; *Baltzer v. C., M. & N. R. Co.* 89 Wis. 257, 60 N. W. 716; *Renne v. U. S. L. Co.* 107 Wis. 305, 83 N. W. 473; *Gray v. Commu-*

*tator Co.* 85 Minn. 463, 89 N. W. 322; *Newport News & M. V. R. Co. v. Campbell* (Ky.) 25 S. W. 267; *Ridenhour v. K. C. C. R. Co.* 102 Mo. 270, 13 S. W. 889, 14 S. W. 760; *Mo. Pac. R. Co. v. Jones,* 75 Tex. 151, 12 S. W. 972; *Murtaugh v. N. Y. C. & H. R. R. Co.* 49 Hun, 456, 3 N. Y. Supp. 483; *Mo., K. & T. R. Co. v. Hauer* (Tex. Civ. App.) 33 S. W. 1010; *Bernier v. St. Paul G. L. Co.* 92 Minn. 214, 99 N. W. 778.

We find no reversible error in the record; therefore the judgment of the court below must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.