KOUTSKY, Respondent, vs. FORSTER-WHITMAN LUMBER COMPANY, Appellant.

*May 3—June 1, 1911.*

*Master and servant: Injury from unguarded gearing: Statutory duty to guard: Extent: Questions for jury: Special verdict: Proximate cause.*

1. Sec. 1636*j*, Stats. (1898), which requires all gearing so located as to be dangerous to employees in the discharge of their duty to be securely guarded, was intended to apply to and protect any employee who at any time, either in the course of his ordinary duties or in the course of occasional or exceptional duties, is brought into dangerous proximity to the gearing.

2. In defendant's sawmill a shaft which ran beside a live-roller table and operated the rollers by means of bevel gearings at the end of each, was covered on top by boards one foot wide and at the side, under the edge of the top covering, by a drop board originally about six inches wide. Plaintiff was at times required to step down into an alley adjacent to such shaft to clean up *débris* which accumulated there, and in so doing would necessarily come into very close proximity to the gearing. He was not so engaged usually or at the time of the injury in question. *Held*, that it was a question for the jury whether the gearing, if unprotected at the side, was so located as to be dangerous to him in the discharge of the occasional duty.

3. In an action grounded upon alleged failure of an employer to guard dangerous gearing, a question in the special verdict, "'Did the defendant negligently fail to securely guard or fence the gearing in which plaintiff was caught and injured?" taken in connection with the court's instruction on the subject, is *held* to cover without prejudicial error the questions of necessity for and sufficiency of the covering, although it would have been better to submit the inquiry in two separate questions.

4. The inquiry in such a case should not be limited to the question whether there was negligence as to a person who was engaged in doing the very duty which plaintiff was doing at the time of the accident.

5. There can be no recovery by an employee for neglect of the duty imposed by said sec. 1636*j* unless such neglect was the proximate cause of his injury, and to render it the proximate cause there must be the element of reasonable anticipation on the

part of the employer of an injury of some kind resulting by reason of the unprotected gearing to an employee performing duties similar to plaintiff's duties at the time of the accident.

6. Plaintiff's duty required him to stand upon the top covering, one foot wide, over the shaft above mentioned. While at work there he was struck by a piece of edging coming crosswise along the live rollers, and caused to fall into the alley at the side of such shaft. In throwing his arms out and upward to save himself, he thrust his hand into the gearing at a point where the side covering was broken away, and was injured. *Held*, that such injury was within the realm of reasonable anticipation as the result of the unprotected gearing, and the jury were warranted in finding that the failure to guard such gearing was the proximate cause of the injury.

MARSHALL, BARNES, and VINJE, JJ., dissent.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action to recover for personal injuries charged to have resulted from an uncovered or insufficiently protected gearing in defendant's sawmill at Hiles, Wisconsin. Plaintiff was about twenty-five years of age, a young man of ordinary intelligence, and on May 15, 1909, had been working in the defendant's mill some five or six weeks, for the last three weeks of which time he had worked about the slasher slide and live-roller table, where his injury occurred on the last named date. The following description of the slide and table in question was stipulated to be correct by the parties upon the trial, and is here inserted for the sake of greater accuracy:

"That the live-roller table ran east and west in defendant's mill and that at the west end was the slab bumper, and on the north side of the live-roller table at the west end was the slasher slide, which was 24 feet and 9 inches long east and west and approximately 11 feet wide, in a slanting position, running up from the bottom of the northerly edge of the live-roller table to and beyond the slasher saws situated in the northern portion of the mill; that the live-roller table was approximately 60 or 70 feet long; that between the slab bumper and the lumber bumper was about from 24 to 30 feet; that in the live-roller table between the slab bumper and the lumber bumper were six live rollers operated as described in the plead-

ings 4 feet apart from center to center, said live rollers being approximately 10 inches in diameter; that on the south end of each live roller and attached to the axis thereof was a bevel gearing about 8 inches in diameter, which meshed or engaged with a similar gearing of the same size upon the shaft running east and west from the south end of the live roller; the power to turn the live rollers was transmitted to the shaft referred to by another shaft from below and turned the live rollers so that the tops thereof moved toward the west. The top of the live-roller table was about 2 feet above the floor and about 2 feet wide. The shaft referred to was covered by two six-inch maple boards, making the top covering of the shafting a trifle over 12 inches wide; and on the south side under the south edge of the top boards was a drop board originally about 6 inches wide. These descriptions and measurements apply to the place of the accident and a considerable distance east and west. That commencing about south of the slab bumper and directly under the horizontal shaft and gearing in question is a hole in the floor about 6 inches wide and extending east under said drive shaft and gearing a distance of about 24 feet and beyond the gearing where the plaintiff was injured; that said hole in the floor led to a conveyer underneath into which waste, sawdust, bark, and short pieces of edgings were thrown, and that said hole was divided up by the joists in the floor underneath, and that under the gearing in question where the injury occurred, the joists were about 6 inches apart. That the height of the top of the boards which covered the shafting and gearing above, from the floor, was 26¼ inches."

The evidence tended to show that plaintiff's duty was to stand near the west end of the slasher slide on the live-roller casings with a pike pole and pull the slabs and edgings from the live rollers and straighten them on the slasher slide, so they would go into the slasher saws straight, and if the edgings got crossways on the other end of the slasher slide to step on to the board which covered the gearing and drive shaft and walk eastward and straighten them out, also to clean up around the slasher when short pieces fell off and to clean up under the gearing. The evidence further tended to show that at the time of the accident he had been straightening edgings.

at the west end of the slasher slide when a number of edgings got piled crossways eighteen or twenty feet east of him, and he walked east on the boards covering the gearing about that distance and straightened the edgings out with his pole. When he was facing northwest a slab coming from the east on the live rollers cornerwise hit his heel and he fell down into the alley just south of the line shaft and gearing, and as he fell he reached out his hand and grabbed and thrust it into one of the gears, taking off three fingers. There was evidence to the effect that a piece had been broken off from the lower portion of the drop board covering the gearing at this point for some time, leaving the gearing partly exposed, and it was claimed that on account of the absence of this piece of the drop board it became possible for the plaintiff's hand to be thrust into the teeth of the cogs as he grabbed at the boards in his fall. He testified that he was about to step down on to the floor and clean up around the hole in the floor as the slab struck him.

The jury returned the following special verdict:

"(1) Was plaintiff injured at the time and place alleged, and substantially by the means and in the manner testified to by him? *A.* Yes.

"(2) Did the defendant at and prior to the time when plaintiff sustained his injury negligently fail to securely guard or fence the gearing in which plaintiff was caught and injured? *A.* Yes.

"(3) If you answer the second question 'Yes,' then answer this: Was such negligence the proximate cause of plaintiff's injury? *A.* Yes.

"(4) Did any want of ordinary care on the part of the plaintiff proximately contribute to produce his injuries? *A.* No.

"(5) What sum of money would fairly compensate plaintiff for the damages sustained by reason of his injuries? *A.* $3,200."

Motions by defendant to change the answers to the second, third, and fourth questions, and for judgment for defendant

on the verdict as changed; also for judgment notwithstanding the verdict; also for a new trial, were successively denied, and judgment entered for the plaintiff on the verdict, from which the defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.* To the point that sec. 1636*j,* Stats. (1898), did not apply to this case for the reason that the unguarded gearing was not dangerous to employees working in the position in which the plaintiff was at the time of his injury, they cited *Walker v. Simmons Mfg. Co.* 131 Wis. 542; *Powalske v. Cream City B. Co.* 110 Wis. 461; *Miller v. Kimberly & C. Co.* 137 Wis. 138; *West v. Bayfield M. Co.* 144 Wis. 106; *Houg v. Girard L. Co.* 144 Wis. 337; *Cobb v. Welcher,* 75 Hun, 283; *Dillon v. Nat. C. T. Co.* 181 N. Y. 215.

*D. D. Conway,* attorney, and *P. H. Martin,* of counsel, for the respondent.

WINSLOW, C. J. While the complaint in this action does not mention sec. 1636*j,* Stats. (1898), it is very clear that it is based upon the alleged failure by defendant to comply with the requirements of that statute and the case was submitted to the jury upon this basis.

The important claims of error relate to the application of this statute to the case, and the manner of the submission of the questions under it to the jury. As will be seen by reference to the statement of facts, the trial judge covered the vital issues in the case by four simple questions, asking (1) whether the plaintiff was injured in the mannner he claimed; (2) whether the defendant negligently failed to securely guard or fence the gearing in which the plaintiff was caught; (3) whether such negligence, if found, was the proximate cause of the injury; and (4) whether want of ordinary care on plaintiff's part contributed to produce his injuries.

The first and most serious contention made by the appel-

lant is in substance this: that sec. 1636*j*, Stats. (1898), which requires all gearing, which is so located as to be dangerous to employees in the discharge of their duty, to be securely guarded or fenced, only applies to a case where the evidence shows that the unguarded gearing was dangerous to an employee *working in the position in which the plaintiff was at the time of his injury.*

Stated in another way, the contention is that the statutory duty to guard can only be invoked by an employee who at the moment of the accident is performing a duty which necessarily or ordinarily brings him into dangerous proximity to the unguarded gearing. Applying the contention to the concrete case before us, it is in substance that the gearing in question was plainly not dangerous to a man engaged in straightening slabs on the slasher slide, because it was under the boards on which he was standing, and hence, though the unprotected gearing might possibly be dangerous to a man cleaning up the floor under it, still, as the plaintiff was not so engaged at the time of his injury, the statute has no application to the case. *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694, and *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153, are cited as sustaining this contention.

We regard this as too narrow a view of the statute. As first enacted (ch. 549, Laws of 1887) this statute required that gearing be guarded only when so located as to be dangerous to employees "when engaged in their ordinary duties." These last words were dropped out in the revision of 1898, and the words "in the discharge of their duty" inserted. This change very satisfactorily indicates the legislative intent to broaden the scope of the statute and cover by its terms any employee who may at any time, either in the course of his ordinary duties or in the course of occasional or exceptional duties, come within the danger zone.

There was evidence in the present case to the effect that the plaintiff at times was required to step down into the alley be-

tween the live rollers and the edger table (in other words, into the place where he fell), and clean up the *débris* which accumulated there. In so doing he would necessarily come into very close proximity with the gearing in question, and it was certainly fairly a question for the jury whether the gearing, if unprotected at the side, was not so located as to be dangerous to him in the discharge of this occasional duty. If it was, then the command of the statute to securely fence or guard the gearing applied as between the plaintiff and the defendant, notwithstanding the fact that his usual duties would not ordinarily bring him into dangerous proximity to the gearing. So we think that the second question of the verdict is not to be condemned because it does not limit the inquiry to the question whether there was negligence as to a person who was engaged in doing the very duty which the plaintiff was doing at the time of the accident. If in the performance of any of his duties, ordinary or exceptional, he was brought into dangerous proximity to the gearing, the statute stepped in and required the employer to fence or guard the gearing. The court instructed the jury with regard to this question as follows:

"This question is to be answered from the whole evidence, in view of the legal requirement of the owner or manager of every place where persons are employed to perform labor, and which place has or contains as a part of its equipment belting, shafting, gearing, or other machinery particularly mentioned, which is so located as to be dangerous to employees in the discharge of their duties, that the same be securely guarded or fenced. You will determine from the whole evidence whether or not the gearing here under consideration was so located as to be dangerous to persons employed in defendant's mill *as was the plaintiff;* and if it was so dangerously located, then whether or not it was, at the time of the accident and before, securely guarded or fenced so as reasonably to protect such employees, while engaged as such, against danger of injury therefrom; and if not so securely guarded or fenced, then whether the defendant was negligent in failing to securely guard or fence the same."

It seems to us quite certain that this instruction properly tells the jury that the duty to guard applies only in case they find the location of the gearing to be dangerous to persons employed to perform such duties as the plaintiff was employed to perform.   It would doubtless have been better to have put two questions to the jury on the subject: (1) whether the gearing was so located as to be dangerous to the plaintiff in the discharge of his duties if left uncovered, and (2) if so,. whether it was in fact securely covered; but we deem the question as put by the court, together with the instruction, as covering the inquiry without prejudicial error.

We do not regard either the *Walker* or the *Powalske Case* before cited as holding any doctrine contrary to that here decided.

But even if it be found without error that the defendant neglected a statutory duty owing by it to the plaintiff by failing to securely guard the gearing, the question whether such neglect was the proximate cause of the plaintiff's injury still remains to be answered, and there can be no recovery by the plaintiff unless this can be answered affirmatively from the evidence.   The jury did so answer this question, and the contention is that there was no evidence on which that answer can be based.   This is undeniably a close and difficult question,. but we have concluded that we cannot say that there was no evidence to support this answer.   There must be, of course, the element of reasonable anticipation on the part of the employer, not anticipation of the particular injury to the particular person in fact injured, but reasonable anticipation of an injury of some kind resulting by reason of the unprotected gearing to an employee performing duties similar to the plaintiff's duties at the time of the accident.   *Meyer v. Milwaukee E. R. & L. Co.* 116 Wis. 336, 93 N. W. 6.   The accidental and non-negligent slip or fall, resulting from the edging coming along the live rollers crosswise and hitting the plaintiff's foot, is not properly an element in the chain of causation.

It is simply a condition or circumstance to be expected in the natural order of things as liable to occur at any time. Under the circumstances shown here, it was certainly a fact which any employer ought reasonably to anticipate that an employee standing on the narrow board walk on the edge of the alley, busily engaged in straightening moving slabs and edgings with his pike pole, might lose his footing, or make a misstep, or be hit by a slab, and thus fall into the alleyway next to the gears. It seems equally plain that an employer must anticipate that in case of such fall the employee would inevitably throw out his arms and grasp at anything to save himself. If the employer ought to anticipate such occurrences, is it not within the power of the jury to say that he ought to anticipate also that, in the course of the involuntary attempt which every person makes to save himself under such circumstances, the falling person is likely to thrust his hand into unprotected gearing situated where this gearing was? We think this question must be answered in the affirmative. In principle the case is much like the cases of *Yess v. Chicago B. Co.* 124 Wis. 406, 102 N. W. 932, and *Winchel v. Goodyear,* 126 Wis. 271, 105 N. W. 824.

A considerable number of detail errors are alleged, and some of them are argued in the brief. We have examined them and find no ruling which would justify reversal of the judgment, even should it be held erroneous, and we do not deem it necessary to discuss them at length. The important propositions in the case have been treated and no reversible error found.

*By the Court.*—Judgment affirmed.

MARSHALL, J., dissents.

VINJE, J. (*dissenting*). It is a fundamental principle of the law of negligence that in order to enable a plaintiff to recover in an action founded thereon he must prove (1) that the

defendant owed him a duty; (2) that he breached such duty; (3) that such breach was the proximate cause of the injury; and (4) that plaintiff sustained damage as a result of such injury. 1 Shearm. & Redf. Neg. (5th ed.) § 8; 1 Thomp. Comm. on Neg. § 3; Cooley, Torts (2d ed.) 791; 1 Street, Foundations of Leg. Liab. 93–95. "If the defendant owed a duty, but did not owe it to the plaintiff, the action will not lie." 1 Shearm. & Redf. Neg. (5th ed.) § 8. "The expression 'duty' properly imports a determinate person to whom the obligation is owing as well as the one who owes that obligation. There must be two determinate parties before the relationship of obligor and obligee of a duty can exist." 1 Street, Foundations of Leg. Liab. 94. "The first requisite in establishing negligence is to show the existence of a duty which it is supposed has not been performed. A duty may be general, and owing to everybody, or it may be particular, and owing to a single person only, by reason of his peculiar position. . . . But a duty owing to everybody can never become the foundation of an action until some individual is placed in position which gives him particular occasion to insist upon its performance; it then becomes a duty to him personally." Cooley, Torts (2d ed.) 791, 792 (*659, 660). In *Cole v. McKey,* 66 Wis. 500, 510, 29 N. W. 279, this court said: "To constitute actionable negligence, the defendant must be guilty of some wrongful act or breach of positive *duty to the plaintiff.* This is elementary, and has often been recognized by this court;" citing *Cahill v. Layton,* 57 Wis. 600, 16 N. W. 1; *Griswold v. C. & N. W. R. Co.* 64 Wis. 652, 26 N. W. 101.

In the case at bar the defendant owed the duty generally to its employees to exercise ordinary care to comply with the statutory requirement to securely guard the machinery which the statute mentions. But such general duty cannot become the basis of liability as to any one employee unless it is shown that such employee is placed in a position which gives him

particular occasion to insist upon its performance, and when that is shown it becomes a duty owing to him personally. This statutory duty is merely an adjunct to the broader duty resting upon the master to exercise ordinary care in furnishing his servants a reasonably safe place in which to work. This latter duty is also a general duty which the master owes to all his servants. But will it be contended that because the master fails to exercise ordinary care in furnishing his servant A. with a reasonably safe place in which to work, he thereby fails in a like duty to his servant B. without any proof that the two servants occupy like or similar positions with reference to the place of work? One servant may have a reasonably safe place to work, another may not.

Bearing these general principles in mind, let us see how the trial court submitted the case to the jury on the question of defendant's negligence. The question submitted to the jury was: "Did the defendant, at and prior to the time when plaintiff sustained his injury, negligently fail to securely guard or fence the gearing in which plaintiff was caught and injured?" The court instructed them relative thereto as follows:

"This question is to be answered from the whole evidence, in view of the legal requirement of the owner or manager of every place where persons are employed to perform labor, and which place has or contains as a part of its equipment belting, shafting, gearing, or other machinery particularly mentioned, which is so located as to be dangerous to employees in the discharge of their duties, that the same be securely guarded or fenced. You will determine from the whole evidence whether or not the gearing here under consideration was so located as to be dangerous to persons employed in defendant's mill as was the plaintiff; and if it was so dangerously located, then whether or not it was, at the time of the accident and before, securely guarded or fenced so as reasonably to protect such employees, while engaged as such, against danger of injury therefrom; and if not so securely guarded or fenced, then whether the defendant was negligent in failing to securely guard or fence the same. In determining this question in the

manner stated, you will, among other things, in like manner determine the facts as to what extent the gearing was in fact guarded or fenced at the time of the accident and before; wherein, if at all, it was not securely guarded or fenced, in view of its location with reference to the work to be done by employees in its immediate vicinity, in view of the office or function performed by such gearing, and in view of all the circumstances, as shown by the whole evidence, attending and surrounding employees working in its immediate vicinity.

"If, upon the whole evidence and within these instructions, you shall be affirmatively satisfied that at and prior to the time when plaintiff was injured the gearing in question was so located as to be dangerous to employees in the discharge of their duty in the vicinity thereof, and also that at said time and before the said gearing was not securely guarded or fenced, and also that the defendant was negligent in not securely guarding or fencing the same, in such case you will answer question 2 'Yes;' otherwise, if not so affirmatively convinced as to each one and all of the propositions last mentioned, your answer to question 2 should be 'No.' And in deciding in the manner stated the several inquiries as to whether the gearing was so located as to be dangerous, whether or not it was securely guarded or fenced, and whether or not the defendant was in that behalf negligent, you should do so in view of the rule that the plaintiff and all similar employees was and were bound to perform his and their work in the exercise of ordinary care."

In view of the fact that evidence was received against the objection of the defendant showing that it was the duty of other employees to clear away the *débris* under the gearing in question by sweeping the same into an opening in the floor almost directly beneath it; that it was also the duty of plaintiff at times, in the absence of other employees, to go down and so clear up; and that other employees had occasion to use the alleyway and work near and about the same close to where the gearing was located, it seems that the instructions above quoted are susceptible of only one construction, namely, that if the jury found the gearing in question was so located as to be dangerous to *any employee* in the discharge of any duty,

then they should answer the question in the affirmative.   In other words, all that plaintiff had to show in order to entitle him to recover, so far as defendant's negligence was concerned, was that the master had failed in his duty as to any one of his employees without any proof that a breach of such duty was a breach of any duty which he owed *to the plaintiff* at the time he was injured.   The sentence, "You will determine from the whole evidence whether or not the gearing here under consideration was so located as to be dangerous to persons employed in the defendant's mill as was the plaintiff," cannot be deemed to properly limit the inquiry, for the phrase "as was the plaintiff" may merely be an assertion that plaintiff was employed in defendant's mill.   But even if it is construed to mean employed in discharging the duties plaintiff did, it is too broad, for the evidence was undisputed that it was at times plaintiff's duty to clear out the *débris* underneath, and yet there is no pretense he was so engaged at the time of the injury.   Moreover, the subsequent part of the instruction completely dispels the idea that the jury were limited to the question of whether or not the gearing was so located as to be dangerous to the plaintiff in the discharge of any of *his* duties,— much less the duty he was engaged in at the time of his injury, for they were explicitly told to answer the question "Yes" if the gearing was so located as to be dangerous to employees in the discharge of their duties in the vicinity thereof, if it was not securely guarded and if the defendant was negligent in not securely guarding it.   This left the defendant's negligence to be tested by the fact as to whether or not the gearing was so located as to be dangerous to employees generally in the discharge of their duties in the vicinity thereof, and not, as I believe the true test to be, whether or not it was dangerous to the plaintiff in the discharge of the duties he was engaged in at the time he was injured.   Hence the instructions should have been limited to the question as to whether or not the gearing was so located as to be dangerous to the plaintiff in the

discharge of the duties he was performing at the time he was injured. If it was not so located as to be dangerous to him in the discharge of such duties, he cannot recover even though it may have been dangerous to other employees in the discharge of their duties, or to him in the discharge of other duties. *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 551, 111 N. W. 694; *Wawrzyniakowski v. Hoffman & Billings Mfg. Co., ante,* p. 153, 131 N. W. 429.

The last case was reversed on the ground that it was error to instruct the jury that they might find defendant guilty of negligence if (1) there was insufficient light; or (2) if the saw was uncovered; or (3) if its shifting gear was defective, because if there was sufficient light plaintiff's duty did not call him near the saw and its condition then became immaterial—clearly recognizing the principle that plaintiff must show a breach of duty by the defendant toward him in the discharge of the duties he was engaged in and under the conditions existing at the time he was injured. In that case it was admitted the saw was uncovered, but that was held immaterial unless plaintiff showed it was *his* duty to be near it. It was not then held to be sufficient to show that the saw was dangerous to other employees or to plaintiff under other conditions than those that obtained at the time he was injured.

But it may be argued that, in finding defendant's negligence to be the proximate cause of plaintiff's injury, the jury must have found defendant guilty of a breach of duty towards him. If this contention is correct, then no error in the submission of the question of defendant's negligence can be successfully assigned, and the question is practically eliminated from a negligence case. I have always understood that the questions of defendant's negligence and of proximate cause were separate and distinct questions in such a case, and that the one cannot be substituted for the other, nor can vital error in the submission of the one be cured by a correct submission

of the other. The defendant is entitled to a correct submission of the question as to whether or not he has breached a duty he owed the plaintiff, and if it is found that he has, then whether or not such breach of duty—or negligence—is the proximate cause of plaintiff's injury. Any material error in the submission of either question is prejudicial.

For the error in the instructions above noted, I am of the opinion that the judgment should be reversed and the cause remanded for a new trial.

BARNES, J. I concur in the foregoing dissenting opinion of Mr. Justice VINJE.