LAW, Respondent, vs. AMERICAN BEDDING COMPANY, Appellant.

*September 13—November 14, 1911.*

*Master and servant: Negligence: Injury to servant: Unguarded shafting: Dangerous location: Questions for jury: Contributory negligence: Special verdict: Facts omitted: Presumptions.*

1. Where a shaft, upon which was a set-screw projecting about three fourths of an inch from an iron collar, was at such a distance from the floor of a factory and so near an upright timber that ordinarily employees could not come in contact with it except in oiling, repairing, or putting on belts, and the uncontroverted evidence was that it was not the duty of any employee to come near the shaft while it was in motion, such shaft should have been held, as matter of law, not to have been so located as to be dangerous to employees in the discharge of their duties. *Walker v. Simmons Mfg. Co.* 131 Wis. 542, distinguished.

[2. Whether there was contributory negligence on the part of an employee who, after being instructed to stop the machinery in order to put a belt upon a pulley on such shaft, attempted to put the belt on after the power had been thrown off but before the shaft had ceased to revolve, and was caught by the set-screw and injured—there being evidence that it was usual, not in this factory but generally, to put pulleys on in that way,— is not determined.]

3. Negligence of the defendant cannot be presumed under sec. 2858*m*, Stats. (Laws of 1907, ch. 346), in support of a judgment against him, where there is no evidence tending to show that he was negligent.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge.. *Reversed.*

For the appellant there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

*Victor Linley,* for the respondent, contended, *inter alia,* that an omission to find formally that there was negligence or want of ordinary care is immaterial if all the material facts are found from which it can be inferred. *Kelleher v. M. & N. R. Co.* 80 Wis. 584, 50 N. W. 942; *Patry v. C., St. P., M. & O. R. Co.* 82 Wis. 408, 52 N. W. 312; *Trapp v. New Birdsall Co.* 109 Wis. 543, 85 N. W. 478. Besides, any such formal omission would be cured by the statute, sec. 2858*m.*

The following opinion was filed October 3, 1911:

TIMLIN, J. The jury by special verdict found that there was a set-screw upon a shaft so located as to be dangerous to employees in the discharge of their duties; and that the defendant failed to have the set-screw and shaft securely guarded or fenced. Such failure was the proximate cause of plaintiff's injuries. The plaintiff was not guilty of any want of ordinary care which contributed proximately to produce his injuries, nor was he prior to the injury directed by defendant's foreman not to put on the belt while the shaft was in motion. He sustained damages to the amount of $2,250.

A shaft in defendant's factory, six feet two inches from the floor, carries several pulleys, and at one place rests in a journal box upon an iron bracket fastened to an upright timber. On one side of this journal box there is an iron collar fastened by a set-screw on the shaft to prevent lateral movement along the shaft. Fourteen inches further along the shaft there is a pulley of twenty-eight inches diameter which carries a three-inch belt driving a blower. The place for oiling that journal is on top of the journal box and very near the set-screw, but no oiling was done while the machinery was in motion. The head of the set-screw projected about three fourths of an inch

outside the periphery of the collar.    When the blower was not
in motion the belt was pulled off this pulley on the side
toward the set-screw and hung loosely on the shaft.    This
shaft is run by an electric motor, and the power can be readily
turned off and the shaft stopped for the purpose of replacing
the blower belt on the pulley when that is necessary.    The
belt is quite loose, and may be replaced either by pushing it
over the outside of the pulley or by putting it partly on and
then turning the pulley by hand.    The uncontroverted evi-
dence is that it was not the duty or the practice of any em-
ployee to go near the shaft while it was in motion.    Oiling
and repairing were done when the power was shut off and the
shaft not in motion, and the belts were only put on when the
shaft was still, and there was no necessity for putting the
belts on while the shaft was in motion.    A box stood under
the shaft on the floor near the pulley, apparently for the em-
ployee engaged in putting on the belt to stand upon.

The plaintiff was an engine driver, or, as it is sometimes
called, a stationary engineer, and stood on this box when in-
jured.    The testimony most favorable to him is his own, as
follows:

"Engineering was all I was hired for and all I done.    I
did not put on this belt while I worked there before.    As to
how I come to put on that belt, we hadn't started up yet that
morning.    I guess may be 8 o'clock or may be along about
that time, when I got ready to start I went into the other
room and hunted Korte up.    Korte was a kind of superin-
tendent there.    He is the man that was in charge.    He hired
me.    I went into the main building to look for him to come
and throw the belt on, and he says: 'I am busy, you go in and
tell the boy to shut the motor down until you put the belt on.'
And I obeyed the orders.    I told the boy and the boy shut it
down, and I waited until the shaft got to running pretty slow
and I undertook to throw the belt on and my clothes got
ketched.    I should judge it was within five or six revolutions
of stopping that I attempted to put the belt on.    It stopped
in five or six revolutions after I got ketched.    I waited until I

thought the shaft had slowed down enough so I could throw it. on. I got up there on the box to throw the belt on and was turning around to get hold of the belt; that set-screw there ketched my clothes and pulled this one (hand) clear around the shaft, and I ketched it there with my hand and held it there until it pulled my clothes all off."

It thus appears that, in the face of an instruction to stop this part of the machinery in order to put on the belt, the plaintiff, knowing it was being stopped and without waiting for it to come to a full stop, attempted to put on the belt while the shaft was in motion. In the trial of cases arising under sec. 1636j, Stats. (1898), it must often be a question of fact whether the shaft, gearing, etc., left unguarded and unfenced was so located as to be dangerous to employees in the discharge of their duties. Where there is contradictory evidence on this point or contradictory inferences may be drawn from undisputed evidence, this is a question for the jury. But where the evidence is without dispute and no reasonable contradictory inferences may be drawn therefrom, it is a question for the court whether the machinery, etc., is so located. So long as no employee was required or permitted to oil this bearing while the shaft was in motion, or to put the three-inch belt upon the pulley while the shaft was in motion, there could be no reasonable inference drawn from the evidence that the shaft bearing the set-screw was so located as to be dangerous to employees in the discharge of their duties. The affirmative was on the plaintiff upon this point, and the uncontroverted evidence above referred to removed any inferences which might be derived from location with reference to the belt and place of oiling. The shaft was also at a distance from the floor as stated.

The distinction between this case and *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694, is that in the last mentioned case there was affirmative evidence that the duties of the employee required him to pile wire mattresses under and quite up to the shaft there in question, while in the in-

stant case the shaft is at such a distance from the floor and
so near to the upright timber that ordinarily employees could
not come in contact with it except in oiling, repairing, or put-
ting on belts, and the uncontroverted evidence shows that
these things were done when the shaft was not in motion.

Another point is made that the respondent's evidence above
quoted shows him guilty of contributory negligence.    In re-
buttal of this the respondent offered evidence that it was
usual, not in this mill but generally, to put on such belts after
the power had been thrown off but before the shaft had ceased
revolving.    It must be confessed that upon this record there
is a pretty strong case of contributory negligence made by the
respondent, but as this court is not unanimous on that point and
the case is disposed of on the other exception, we think discus-
sion and decision on the last point may be omitted.    We are
therefore compelled to rule that the court erred in denying
the motion of defendant to change the answer to the first ques-
tion in the special verdict finding the shaft so located as to
be dangerous to employees from Yes to No.    No presump-
tions in favor of the judgment under sec. 2858m, Stats.
(Laws of 1907, ch. 346), can be upheld, because upon a care-
ful reading of the evidence we find nothing tending to show
that the defendant was negligent.

*By the Court.*—Judgment reversed, and cause remanded
with directions to change the answer as indicated in this opin-
ion and render judgment for the appellant.

A motion for a rehearing was denied November 14, 1911.